# SUPREME COURT OF TEXAS.

## TERM OF 1871-2.

### R. LLOYD v. C. E. BRINCK AND ANOTHER.

1. District judges have great legal discretion in all causes tried before them, and should exercise it to the end that the laws may be enforced, and justice and equity be administered to all ; but that discretion is a sound and legal discretion, and to be exercised in compliance with known rules and principles of law. That discretion is not the mere arbitrary will and pleasure of the judge.

2. When a jury renders a verdict in proper form, and responsive to the issues presented by the pleadings and submitted to them by the court, no discretionary power is vested in the court to set that verdict aside upon its own motion, notwithstanding the verdict may be against the weight of the evidence, or in disregard of the instructions of the court ; but the party aggrieved may, by his motion for a new trial or in arrest of judgment, call forth the judicial power of the court to prevent wrong and secure the administration of the law.

3. The entry of judgment upon a valid verdict involves no judicial or discretionary powers, but is simply a ministerial act ; and to enforce its performance by the District Court, the writ of *mandamus* will issue from the Supreme Court in a proper case.

4. In an action of debt, the jury returned a verdict in favor of the plaintiff and for a specified amount. The court below received the verdict, but immediately, and of its own motion, set it aside and granted a new trial. On a subsequent day of the same term, the plaintiff moved for judgment in accordance with the verdict; which motion was overruled. *Held*, that the case is one in which an appeal is not an adequate remedy ; and therefore the writ of *mandamus* is awarded by this court to compel the court below to enter judgment upon the verdict.

APPLICATION to this court for the writ of *mandamus*.

1—XXXV

Lloyd was plaintiff in the court below. In November, 1867, he brought suit in the District Court of Marion county, against Mrs. C. E. Brinck, to recover $18,000, which she was alleged to owe him by her promissory note.

Without unnecessary detail of the pleadings or evidence in the court below, it suffices to state, that on the trial of the cause, in May, 1871, the jury returned their verdict, in regular form, in favor of Lloyd, for the amount of his debt and interest; "whereupon," says the record of the court below, "the court ordered that the verdict rendered by the jury in the above stated cause be set aside, and that a new trial be granted." At a later day of the term, the plaintiff moved that judgment be rendered in accordance with the verdict, but the motion was overruled, and he excepted.

No reason was assigned by the court below, so far as the record shows, for its arbitrary order setting the verdict aside, and granting a new trial; but the charge of the court to the jury was strongly in favor of the defendant, who was a married woman when the note was given. It may, therefore, be safely inferred that the jury's disregard of the instructions was the cause which superinduced the order.

This proceeding in the Supreme Court was instituted by an original petition under oath, filed in this court on the first of July, 1871. It impleaded Mrs. Brinck, and also J. D. McAdoo, the judge of the District Court, as defendants. Its allegations recapitulated the pleadings and proceedings in the District Court, and exhibited a transcript of the record of the case in that court. It prayed that the defendants be cited to show cause why a peremptory *mandamus* should not issue, commanding the defendant McAdoo, as judge of the District Court, or any other judge exercising the powers and

duties of judge of such District Court, to render final judgment according to the verdict in the cause, and to cause the same to be entered in the minutes of the court as a record thereof.

On this petition Mr. Justice Ogden, in chambers, on the first of July, 1871, indorsed his *fiat* to the clerk of the Supreme Court, directing him to issue *scire facias*, returnable on the first day of the ensuing term, and requiring the defendants then to show cause why a peremptory *mandamus* should not be granted in accordance with the prayer of the petition. Thereupon the clerk issued a precept to the sheriff of Marion county to cite the defendants to show cause as required by the order of the Judge. This precept was served on the defendants, and Mrs. Brinck filed her answer on the twenty-fifth of November, 1871. In her answer she excepted to the petition on three grounds, viz. :

1. The cause, as shown from the proceedings, is still pending in the District Court, and is not subject to revision by *mandamus*.

2. The action of the District Court in granting or refusing a new trial is matter of judgment or discretion of the court, and cannot be revised on *mandamus*.

3. The remedy is to prosecute an appeal, or writ of error, on the final trial in the District Court, if injustice should be done the plaintiff.

Besides these exceptions, the answer set forth an attempted justification of the action of the judge of the District Court. This justification was based upon the contumacy of the jury in disregarding their instructions ; and upon the coverture of the defendant Brinck, and her consequent incapacity to contract, at the date of the plaintiff's demand.

Upon this state of pleadings in the Supreme Court the cause came to hearing.

*J. H. Rogers, A. W. O. Hicks*, and *W. L. Robards*, for the relator Lloyd.

*Culberson & Mabry*, for the respondents.—1. The district judge acted in a judicial capacity when he determined that the verdict in this case should be set aside, and a new trial awarded the defendant. The question presented to the judge by the unauthorized action and conduct of the jury in returning a verdict wholly unsustained by the evidence, and, in view of the facts, in a spirit of defiance to the instructions of the court, involved the exercise of judgment and discretion, and his action cannot, therefore, be revised on *mandamus*. (United States v. Lawrence, 3 Dallas, 42; Paulding v. Decatur, 14 Peters, 599; *Ex Parte* Crane *et al.*, 5 Peters, 190; Arberry v. Beavers, 6 Texas, 457.)

2. While the statute regulating new trials seems to contemplate a written application therefor, in which the grounds relied on shall be set out, and that none other than those specified shall be heard, yet it is insisted that nothing more was contemplated by this statute than that the party making the application should call the attention of the court to some one or more of the grounds upon which new trials are allowed. It was not intended to deny to the court the right to consider grounds not specified in the motion, or, *ex officio* without any motion, to set aside a verdict and award a new trial. (Sweeney v. Jarvis, 6 Texas, 44.)

3. The verdict in this case was clearly contrary to the evidence, and to the charge of the court. More than that, it was manifestly without evidence or law to support it. It was not rendered by inadvertence or mistake. It was not a result arrived at after weighing conflicting testimony; but it was a deliberate effort on the part of the jury to disregard the law of the case,

as given them by the court.   In proof of this, we refer
the court to the statement of facts.   "There is nothing
in the laws or Constitution, or in the great principle of
jury trials, which can justify, or for a moment tolerate,
a verdict without evidence, or contrary to all evidence,"
especially when returned by the jury in the open,
avowed, and manifest disregard of the law of the case.
(Hall v. Page, 4 Ga. Rep., 428 ; Graham and Water-
man on New Trials, 1296.)

4.   A *mandamus* is an extraordinary remedy, and
will not be allowed if redress can be afforded in any
other mode.   The party who seeks it must show a clear
legal right, and a corresponding obligation on the part
of the officer.   The plaintiff presents a verdict mani-
festly contrary to the evidence, and admitted by the
jury in their action, to be returned contrary to the
charge, and in opposition thereto ; and asks that the
judge may be required to set aside a new trial granted,
and to enter up a judgment upon the verdict. . Has the
plaintiff shown that he has a clear legal right to a
judgment on this verdict ?   The jury had no power to
render a verdict contrary to the evidence, and against
the charge of the court.   A verdict thus worthless,
without evidence to support it, in opposition to the law
of the case, and in disregard to the instructions of the
judge, can furnish no sufficient predicate to base a clear
legal right upon.   What principle in the law, or the
Constitution, or the laws regulating trials by jury,
would require a judge for a moment to tolerate such a
verdict ?   (Arberry v. Beavers, 6 Texas, 457.)

OGDEN, J.—An alternative writ of *mandamus* was
issued, and served on the defendants in this cause, to
show cause why a peremptory *mandamus* should not
issue to the said J. D. McAdoo, judge of the eighth

judicial district, commanding him to enter up a final judgment in a certain cause tried before him, in the county of Marion, wherein the said Richard Lloyd is plaintiff, and C. E. Brinck is defendant.

The questions for determination in this cause will necessitate an inquiry into the judicial authority and discretionary powers of the district judge over a cause while being tried before him, and more especially that discretionary authority over the verdict of a jury, when rendered in open court, according to the forms of law. Judges, in the trial of all causes before them, should from necessity have and exercise great legal discretion in every stage of the trial, to the end that the laws may be enforced, and justice and equity administered to all. But that discretion should be a sound and legal discretion, exercised in compliance with known rules, and principles of law ; and not the arbitrary will and pleasure of the judge presiding. Under our system of legal jurisprudence, it is the office and duty of the judge to preside over and direct the investigation into the legal rights and responsibilities of his fellow man ; to decide all questions of law that may arise, and to receive and record the verdicts of the juries, who are the exclusive judges of the facts of a case. It is the province of the judge, or court, to decide what facts are legitimate and proper to be submitted, to a jury ; but when once submitted, the court loses all further control over those facts, until directed what final judgment to enter, by the verdict of the jury. The verdict is the judgment of the jury upon the facts submitted to them, and the judgment of the court must follow the verdict, and that alone. It therefore follows, that the entry of the judgment of the court involves no judicial or discretionary powers, but is simply a ministerial act, which follows the verdict as a matter of course. (Com. Gen. Land

Office v. Smith, 5. Texas, 471.)   It is true that the law
makes it the duty of the jury to decide the issues pre-
sented by the pleadings, and the law as given them by
the court ; and where the jury, in violation of their
solemn oaths, find a verdict upon issues not presented,
or where they find their verdict upon a portion only of
the material issues presented, or where the verdict itself
is fatally defective, in either case the verdict would be
void, and no judgment could be entered.   It is also be-
lieved, that should a jury find a verdict without any evi-
dence to support it, the court would be justified in
treating it as a nullity.   But when the verdict is respon-
sive to the issues presented by the pleadings, the law,
and the evidence, and when it is in due form, it is be-
lieved that the court has no discretion in the matter, and
must enter the judgment in conformity therewith, not-
withstanding an injustice may be done thereby.

In the case of Claiborn v. Tanner, 18 Texas, 68, Jus-
tice Wheeler says :   "It is upon that which the jury
have found, not what they might or ought to have found,
that the court proceeds to render judgment.   If the
court might look to the evidence outside of the finding
of the jury, for the facts on which to give judgment,
the verdict might be wholly disregarded, and the right
of trial by jury wholly defeated."   If, therefore, the
verdict of the jury was, in this case, in proper form,
and responsive to the issues presented by the pleadings,
we are of the opinion that it relieved the court of any
discretion, or revisory power over it, notwithstand-
ing it may have been against the weight of evidence, or
the law as given by the court.   Juries may, and undoubt-
edly do, commit many errors, and render unjust if not
oppressive verdicts ; but the law has provided a correct-
ive for every error, and the party aggrieved may,
through a motion for a new trial, or in arrest of judg-

ment, call forth the judicial powers of the court, to pre-
vent a wrong, and to secure the administration of law
and justice.    This appears to be the positive require-
ment of the law, made mandatory by our statutes.
(Paschal's Digest, Arts. 1465–1470 and 1473.)

Upon examining the record in the cause of Richard
Lloyd v. C. E. Brinck, we discover no such error in the
verdict of the jury as would render the same wholly
void, and upon which no judgment could be rendered.
It is entirely responsive to the prayer of the plaintiff's
petition, and the pleadings in the cause ; and we are
not prepared to say that the verdict is wholly without
foundation in the evidence ; and yet the court received
the verdict from the jury, and *ex efficio* refused to enter
up a judgment, but set this verdict aside, and ordered a
new trial.    We must, therefore, decide that it was the
duty of the court to have received the verdict, and to
have entered up a judgment on the same, and to have
left it for the party aggrieved, by motion or otherwise,
to have called forth the judicial powers of the court, as
provided by law, to determine the correctness or in-
validity of the verdict and judgment.    It then becomes
highly important to determine the proper remedy for
such an error.    The respondents herein contend that
the setting aside of a verdict, and granting a new trial,
is a judicial act, to be exercised at the discretion of the
court, and to be corrected only after a final judgment in
the cause, and then upon an appeal to a higher tribu-
nal.    This certainly is the proper and legitimate remedy
in all ordinary cases, where ultimate and complete jus-
tice may finally be obtained ; but there may arise a case
where an appeal from a final judgment would be
wholly inadequate if not completely unattainable, and
the party aggrieved be wholly without a remedy.

In the cause at bar, we have no reason to reflect upon

the motives or intentions of the court in setting aside
the verdict of the jury, and believe that the action of
the judge was prompted by a desire to administer strict
and impartial justice; but we are unable to measure the
damages which may have already resulted to the plain-
tiff or defendant, or which may arise before another
trial could be had.  And if we adopt the proposition,
that the District Court has *ex officio* unlimited control
over every verdict of a jury, then we must admit the
possibility that on the next trial the verdict of the jury
and the ruling of the court will be the same as before,
and might continue thus, to the total denial of justice.
We are therefore forced to the conclusion that an
appeal on a final judgment in this case (if such judg-
ment ever be reached) would not be an adequate legal
remedy, and that therefore the party had a right to re-
sort to another and more complete remedy.

The remedy sought by the relator in this cause is
*mandamus*, to compel the district judge to enter up
judgment on the verdict of the jury, found on the trial
of his cause in that court.  And we are of opinion that
he is entitled to that remedy.  That a writ of *manda-
mus* will issue to an inferior court to compel the per-
formance of a certain and positive duty, made manda-
tory by law, or where the duty is simply ministerial
and involves no judicial discretion, has been decided
and settled in nearly every State of the Union, and in
the Supreme Court of the United States, as well as the
courts of England.  (Tap on Mandamus, 154; 7 Cranch,
589; New York Insurance Company v. Wilson, 8 Pe-
ters; 291; State of Ohio v. Todd, *et al.*, 4 Hammond,
351; 2 Johns. Cases, 118; 5 Wend., 132; Commonwealth
v. Justice of the Sessions, 9 Mass., 387; 5 Mass., 434;
6 Texas, 465.)  But this right is expressly given by
the Constitution of our State (Article 5, § 3), and

fully provided for by our statutes (Paschal's Digest, 1579), which enacts: "The said court, or any judge thereof, in vacation, may issue writs of *habeas corpus*, *mandamus*, and such other writs as may be necessary to enforce the jurisdiction of said court, and also to compel a judge of the District Court to proceed to trial and judgment in a case." This statute, we think, settles the question as to the legality of the writ; and having herein determined the justice and necessity of the writ, as prayed for, we have now simply to order that a peremptory writ of *mandamus* issue in accordance with the prayer of the relator, commanding the judge of the lower court to enter up a judgment, now for then, on the verdict of the jury, according to the terms and requirements of law.

MANDAMUS AWARDED.