GULF, COLORADO & SANTA FE RAILWAY COMPANY V. J. C. CANTY, DISTRICT JUDGE, ET AL.

No. 4272. Decided June 16, 1926.

(— S. W. —)

**Special Verdict—Rendering Judgment—Mistrial—Mandamus—Case Stated.**

In an action by a servant for injury by negligence of the employer the jury, on special issues submitted, found against plaintiff on the only ground on which he resisted the charge of negligence. (This was furnishing, instead of copper wire asked for, wire of another metal, which in his endeavor to straighten it recoiled and destroyed his eye; which copper wire, he alleged, would not have done. The verdict found that it was copper wire which was furnished). On this verdict, unless lawfully set aside, defendant was entitled to, and moved for judgment in its favor. This the trial court denied and, on plaintiff's motion, declared a mistrial on the sole ground that the answers of the jury on special issues were in conflict. On application of defendant to the Supreme Court for writ of mandamus requiring the trial judge to enter judgment in its favor on the verdict, it is held:

(1) The answers of the verdict on the special issues submitted were not in conflict and showed no ground for refusing to enter judgment for defendant, for declaring a mistrial, and for setting the case for retrial.

(2) Defendant was entitled to the writ of mandamus requiring the trial judge to enter judgment *nunc pro tunc* on the verdict in its favor.

(3) The grounds of the Court's action in declaring a mistrial being distinctly shown in his order thereof, and being insufficient, he could

not, in the mandamus proceeding, support it by other grounds (ignorance and misconduct of the jury in the trial).

(4) It was not necessary in the present case that judgment should previously have been rendered on the verdict in order to entitle the applicant to the judgment *nunc pro tunc.*

(5) The expiration of time and the passing of several terms of the trial court presented no obstacle to the remedy sought by applicant, he having acted with diligence and being in no way chargeable with the delay.   (Pp. 538-551).

Original application to the Supreme Court by the Gulf, C. & S. F. Ry. Co. for writ of mandamus against Canty as District Judge.

The Supreme Court referred the application to the Commission of Appeals, Section B, for their opinion thereon and here adopts same and orders the issuance of writ of mandamus as recommended.

*Terry, Cavin & Mills,* for applicant, cited: Lloyd v. Brinck, 35 Texas, 1; Clark & Loftus v. Pearce, 80 Texas, 146; Hume v. Schnitz, 90 Texas, 72; H. & T. C. Ry. Co. v. Strycharski, 92 Texas, 1.

*Marsene Johnson,* for respondents.

Mr. Presiding Judge POWELL delivered the opinion of the Commission of Appeals, Section B.

On October 29, 1924, there went to trial in the Tenth Judicial District Court of Galveston County, Texas, before Honorable J. C. Canty, Judge Presiding, the personal injury suit of William D. Wright, Jr. v. Gulf, C. & S. F. Ry. Co. The pertinent portions of plaintiff's petition read as follows:

"That in the course of the work of repairing and renovating one of the defendant's locomotives, which said work the plaintiff was doing and assisting, the foreman in charge. of said work instructed this plaintiff to go to the store-room of the defendant, located in a building nearby, and from the storekeeper procure a piece of copper wire of the size known as '16 gauge' and further instructed this plaintiff to straighten said wire and bring same to him in order that said piece of wire might be used in doing the work which this plaintiff and said other employes were doing.

"That plaintiff did, as he was instructed by his superior, go to the storehouse of the defendant, and procure from the storekeeper a piece of wire, which was represented to him by said storekeeper to be '16 gauge' copper wire, said piece

of wire being five or six feet in length.   That the storekeeper
of the defendant could not find in the storehouse of the de-
fendant the spool upon which the wire was usually and
customarily kept and picked the piece of wire which he gave to
plaintiff from a tangled mass of wire, breaking the said piece
of wire from said mass by beating the wire with a heavy
weight.    That when plaintiff received said piece of wire .
same was bent and curled and that it became necessary for
him to straighten same, which he·did attempt to do while
he was carrying said wire back to the place where he had
been working, and that while he was attempting to straighten
the said wire, one end of said wire recoiled and struck plain-
tiff in his right eye, injuring and damaging same in the
manner and to the extent as is hereinafter fully set out
and described.

"That plaintiff had never before handled '16 gauge' copper
wire, if such was the wire delivered to him by the store-
keeper of the defendant, prior to this date, and did not know
that same would recoil, and that the failure of the defendant,
its agents, servants and employes to inform and notify the
plaintiff that said wire would recoil, was negligence and that
said negligence was the proximate cause of the injuries and
damages by the plaintiff sustained.

"That plaintiff is informed and verily believes that the
wire which he had been instructed to get and which was
delivered to him by the storekeeper of the defendant was
not in fact '16 gauge' copper wire, but was wire of another
and different metal.   That had the same been 'copper' wire
same would not have recoiled and would not have struck the
plaintiff in his eye and injured him, and that the failure of
the storekeeper of the defendant to give to plaintiff 'copper'
wire, was negligence, and that said negligence was the proxi-
mate cause of the injuries and damages by plaintiff sustained.

"That plaintiff, as a result of the negligence of the de-
fendant, as aforesaid, has lost the vision and use of his right
eye, and will be forever blinded and disfigured because thereof,
etc."

The answer of the Railway Company is lengthy and con-
sists of general and special exceptions, general denial and
special answers.

The cause was submitted to the jury upon special issues
and the answers of the jury thereto were as follows:

1. That the piece of wire which struck the plaintiff in
his eye was "copper wire."

2. That the plaintiff attempted to straighten the piece of wire delivered to him before handing the same to Mr. Young.

3. That the plaintiff was acting within the ordinary course of his employment in attempting to straighten said wire before delivering the same to his superior, Mr. Young.

4. That the injury sustained by the plaintiff was the result of the ordinary risks of the service, as that term had been defined to the jury by the court.

5. That plaintiff had been damaged in the sum of six thousand dollars.

6. That the plaintiff was not guilty of contributory negligence in receiving the wire from the hands of the storekeeper, or in the manner of handling it afterward and before delivering it to Mr. Young.

Aforesaid answers were returned into open court on October 31, 1924.

On November 1, 1924, the Railway Company filed its motion for entry of judgment in its favor on the ground that it had not been convicted of negligence in the manner complained of in the petition.

On November 18, 1924, Wright's counsel filed a motion, asking that a mistrial be entered. Said motion reads as follows:

"Now comes William D. Wright, Jr., plaintiff in the above cause, and states to the Court that the above entitled and numbered cause came on to be heard and was tried by a jury and before Your Honor on the 31st day of October, 1924, and that because of the inconsistencies of the answers made by the jury to the special issues submitted to them by Your Honor on the trial of said cause, this Honorable Court has been confused and not able to understandingly ascertain how judgement and for whom judgment should be rendered upon the answers of the jury to the special issues submitted, and after duly considering all of said special issues, and the answers of the jury to the same, this plaintiff comes and shows to Your Honor that no legal or correct judgment could be rendered in said cause, which could comply with the axiom of law that substantial justice must be reached in the trial of all causes, and for this reason and other reasons hereinafter set out, plaintiff prays that Your Honor enter a mistrial of this cause, and let it stand for trial on the docket in this court in due order to the end that sub-

stantial justice may be done both the plaintiff and the defendant..

"Plaintiff comes and further alleges that he has been informed, and verily believes that many of the jurors, perhaps a majority or all of them, intended that the answers to the special issues submitted would be sufficient for Your Honor to render a judgment for the plaintiff in the sum of six thousand ($6,000.00) dollars, as found by the jury, and that said jurors, or many of them, intended that the judgment and verdict should be that plaintiff have and recover of defendant the sum of six thousand ($6,000.00) dollars for the damages and personal injuries sustained by him in the loss of the sight of his right eye, and for other damages proved, and that the jurors found said facts to be true, first and began downward from the special issues, and answered the special issues from downward to upward from the last issue up to the first, believing that the first, second and third issues were immaterial to plaintiff's right of recovery of said sum of six thousand ($6,000.00) dollars, as aforesaid.

"Plaintiff further alleges that many of the jurors were unlearned men, not sufficiently educated to understand legal definitions, liable to be and were confused and did not intend to answer said issues in such a way as to prevent absolute recovery by the plaintiff of the damages awarded to him by the jury, to-wit, Six Thousand Dollars.

"Plaintiff is frank to confess to this Honorable Court that he does not believe that any legal judgment can be rendered and entered by Your Honor in this cause that would stand a judicial test, either for the plaintiff or the defendant on account of the apparent inconsistency of the answers of the jury to some of the special issues.

"Plaintiff prays that this motion be set down for hearing to be fully determined by this Honorable Court at such a date and time in the present term as may be convenient to Your Honor, so that substantial justice may be done in this suit on final trial, and that he may be permitted to have process issued for such witnesses as may be necessary for Your Honor to hear and determine the merits of this motion."

The District Court thereupon considered each of aforesaid motions and on November 20, 1924, made the following order thereon:

"On this 20th day of November, 1924, came on to be heard

the motion of the defendant, Gulf, Colorado & Santa Fe Railway Company, heretofore filed herein for the entry of judgment in its favor on the answers of the jury to the special issues to it submitted by the court on the trial of this cause, and at said time came on also to be heard the motion of plaintiff, William D. Wright, Jr., heretofore filed herein to set aside the answers of the jury to the special issues to it submitted by the court on the trial of said cause, and declare a mistrial of this cause; and the court after hearing said motions and the argument of counsel in support thereof, is of the opinion that defendant's motion for judgment in its favor should be denied and overruled, and that plaintiff's motion to set aside the answers of the jury to the special issues to it submitted and declare a mistrial should be granted, because there is, in the opinion of the court, an irreconcilable conflict in the answers of the jury to the special issues to it submitted.

"It is, therefore, ordered, adjudged and decreed by the court that defendant's motion for the entry of judgment in its favor on the answers of the jury to the special issues to it submitted by the court on the trial of this cause be denied, and that plaintiff's motion to set aside the answers of the jury and declare a mistrial of this cause be granted, for the sole and only reason that there is in the opinion of the court an irreconcilable conflict in the answers of the jury to the special issues to it submitted.    (Signed)    J. C. Canty, Judge."

Alleging that there was no "irreconcilable conflict" in the jury's findings and that it was, therefore, the ministerial duty of the judge to enter judgment on the verdict, the railway company on November 21, 1924, prepared and swore to its application for permission to file in the Supreme Court of Texas an application for a mandamus requiring the judge to enter judgment on the verdict. That application was presented to the Supreme Court November 22, 1924. Before passing upon the motion for permission to file the application, the railway company filed a supplemental motion, sworn to December 4, 1924, showing that a new term of the court at Galveston had commenced on December 1, 1924, and that the judge thereof had set the Wright case for trial December 17, 1924. The supplemental motion asked that the District Court be restrained from entering further orders in the case pending a decision of the mandamus proceeding in the Supreme Court. And, the prayer was also that the respondent Canty be required to enter, *nunc pro tunc*, the judgment required by the verdict of the jury in the case.

On December 10, 1924, the Supreme Court entered the following order:

"This day came on to be heard the motion and the supplemental motion of relator for permission to file petition for mandamus and the same having been duly considered, it is ordered the said motions be granted and the accompanying petition be properly filed and docketed."

The cause has since been referred to this court for consideration and recommendation.

It is admitted that the railway company had no adequate remedy at law in its situation. It could not appeal, at that time, from an order of the court entering a mistrial and ordering a new trial.

It is the well settled law of this State that "when a jury renders a verdict in proper form, and responsive to the issues presented by the pleadings and submitted to them by the court, no discretionary power is vested in the court to set that verdict aside." And, it is equally well settled, in this same connection, that "the entry of judgment upon a valid verdict involves no judicial or discretionary powers, but is simply a ministerial act; and to enforce its performance by the District Court, a writ of mandamus will issue from the Supreme Court in a proper case." See: Lloyd v. Brinck, 35 Texas, 1; Clark & Loftus v. Pearce, 80 Texas, 146; Hume v. Schintz, 90 Texas, 72; Houston & T. C. Ry. Co. v. Strycharski, 92 Texas, 1; St. Louis S. W. Ry. Co. v. McArthur, 96 Texas, 65; Armstrong v. Hix, 107 Texas, 194; Gulf, C. & S. F. Ry. Co. v. Muse, 109 Texas, 352.

It will be seen that by an unbroken line of decisions for more than half a century the Supreme Court has held as we have stated. In announcing our principles, we quoted from the early case of Lloyd v. Brinck, supra. In that case, the trial court ordered the verdict set aside without stating any cause for his action in so doing. The Supreme Court saw no cause for setting the verdict aside. Therefore, it ordered the trial court to reinstate the verdict and render judgment accordingly. This is a very strong decision and the court cites earlier cases by its own court. In the case at bar, Judge Canty leaves us in no doubt as to his reason for setting the verdict aside. In this respect the case is different from the Brinck case and we think stronger in favor of the granting of the writ herein. We shall later consider whether or not Judge Canty's reason was sufficient. If not, then mandamus should issue in this case as prayed for.

We do not deem it necessary to quote from most of the other

cases cited by us. The case of Railway Company v. Muse, supra, an opinion by Justice Greenwood, is interesting and in point by analogy. In that case, the trial commenced March 19, 1917. On March 31, 1917, the term of court was ending. It was, on that day, extended for the purpose of making a "full and complete conclusion of said pending trial now in progress in this court."

On April 11, 1917, the jury returned a verdict for $4,000 in favor of plaintiff. Being dissatisfied, the plaintiff asked a new trial. It was granted on June 2, 1917, and a new trial ordered. On that very day, the railway company filed a motion for rehearing, asking that the order granting the new trial be set aside and the judgment for $4,000 reinstated. On October 5, 1917, the District Court granted the motion of the Railway Company and ordered the original judgment entered as of date April 11, 1917.

Upon appeal, the Court of Civil Appeals held that "the trial of said cause was concluded upon the granting of plaintiff's motion for a new trial," and that the extension of the term of court ended June 2, 1917. But, the Supreme Court differed with that view and held the term was still open on October 5, 1917, when the court reinstated the $4,000 judgment.

We quote from the opinion as follows:

"We conclude that, on the facts shown by this record, the extension of the January, 1917, term had not expired when the court, on October 5, 1917, vacated the order for a new trial, and hence the final judgment on the verdict of the jury is in full force and effect.

"And we have no doubt that the defendant is entitled to enforce by mandamus his clear legal right to have the reinstated judgment respected and enforced. It is no sound objection to the award of the mandamus that the defendant might finally secure a review of an adverse judgment following a retrial, by means of appeal to the Court of Civil Appeals and writ of error to the Supreme Court. For, it has been the law of Texas since Bradley v. McCrabb, Dallam, 507, that the writ of mandamus 'will not only issue in cases where the party having a specific legal right has no other legal operative remedy, but when the other modes of redress are inadequate or tedious the writ will be awarded.' Not only would the remedy to defendant of appeal and writ of error, after another trial, be manifestly tedious, but such remedy would also be inadequate; for it is the very essence of defendant's right that it is

entitled not to have to respond further to plaintiff's cause of action than by payment of his judgment. Justice Ramsey, in speaking for the court in Wright v. Swayne, 104 Texas, 444 (140 S. W., 222, Ann. Cases, 1914B, 288), said: 'If the court should wilfully refuse to execute its own judgment according to their true intent and effect, we would have the authority and it would be our duty to direct it to proceed to execute the judgment and sentence of the law'."

In the last quotation, the court said it is "the very essence of defendant's right that it is entitled not to have to respond further to plaintiff's cause of action than by payment of his judgment." That being true, it seems to us that it is also true that it is the essence of relator's right to be protected by the entry of a judgment in its favor on the verdict of the jury which found it guiltless of the only ground of negligence submitted to the jury by the court.

In other words, the court having set aside the verdict, as expressly stated, *solely* because of "irreconcilable conflict" in the answers of the jury, then he had no right to do so if no such conflict in fact existed. If there were any reasonable doubt as to whether or not there existed a conflict in the jury findings, then it might be said that the court could find such conflict in the exercise of judicial discretion. We are in sympathy with the universal rule of law which gives courts greatest latitude in the exercise of their discretion. But, where there is clearly no conflict, there is no exercise of judicial discretion open to the court and the judge must perform his ministerial duty and enter judgment accordingly.

As shown by plaintiff's pleading, which we have quoted, he alleged two grounds of negligence on the part of the railway company: (1) That the storekeeper should have told Wright that *copper wire* would recoil; (2) that, in fact, the wire given to Wright was not *copper* wire, but some other metal; that copper wire would not have recoiled. After the introduction of the evidence, plaintiff rested his whole case upon the latter ground of negligence, and when the jury answered that the wire was in fact "copper wire," he was not entitled to judgment. The railway company was. The jury was expressly told not to answer certain other questions if they had answered that the wire was copper. Had they not so answered that issue, then they were asked to answer whether or not it was negligence to have given Wright the other kind of wire and whether or not such negligence, if any, was the proximate

cause of his injury. It seems clear to us that since the company was not convicted of any negligence, it was entitled to a judgment. And, a mere reading of the jury findings, which we have set out in full, shows there is no conflict. Wright was *damaged*, but the jury did not say this result was the fault of the railway company. Therefore, since the court's only reason for setting the verdict aside has been found to be without any basis, it is clear that the company was deprived of a substantial right in being denied a judgment in its favor and for which it prayed by proper motion filed in due season.

We have already quoted the judgment entered by the trial court, stating his reason for setting the verdict aside. In this mandamus proceeding, respondent Wright merely adopts the answer of respondent Canty. The latter, in his answer, says:

"That on the following day many of the jurors came to him, said respondent Judge, and informed him that they did not understand the charge submitted by this respondent, District Judge; did not understand the issues, nor the meaning of same; that they were informed by other members of the jury in the jury room, while debating, that the answers to issues in the charge were immaterial, so long as the jury could determine the injuries sustained by plaintiff (respondent Wright) and award him compensation therefor.

"That hearing said statements of the jurors so made to him, as Presiding Judge of said Court, respondent, said Judge, ordered all the jurors to be summoned back to court on November 20, 1924, at which time a motion was pending by respondent Wright (plaintiff in court below), that a mistrial be entered in said cause for all the reasons recited in this answer and in the statement of facts herein made up by order of court by the official stenographer.

"On hearing of the motion that a mistrial be entered, the whole jury, every one, was present, sworn, charged and placed under the rule.

"The jurors testified as follows:" (Evidence is here set out).

Concluding, in his answer, the trial court, saying nothing about conflicts in the jury findings, states his reason for entering the mistrial as follows:

"Wherefore the Court (one of respondents here) after hearing said testimony, authorities and argument of counsel, judicially decided that the answers of the jury were ignorantly made: that substantial justice had not been done: and that plaintiff (respondent Wright) should not be deprived of his

rights or day in court by and on account of the gross ignorance and misconduct of the jury, granted the motion to enter a mistrial order, which was accordingly done."

In oral argument before our court, counsel for respondents admitted there was no conflict in the jury findings. So, it seems now that such theory has been abandoned, not only by the trial court, but by counsel for Wright, and an effort is made to hold for naught the judgment of the court regularly entered in this connection. It is a sufficient answer to say that this judgment must import absolute verity, since it seems, so far as the record discloses, to have been entered without any circumstance which could possibly justify a variance of its terms at this time.

While the briefs of the parties do not raise this question, we have been reminded of the fact that no judgment was either *rendered* or *entered* by the trial court. And, it is *generally* true that there must have been a formal judgment *rendered* before an entry *nunc pro tunc* can be ordered. But, there is an exception to this rule, as shown by the following quotation from Corpus Juris, Vol. 34, pages 71 et seq.:

"1.   In General.—The term '*nunc pro tunc*' is a phrase used to express that a thing is done at one time which ought to have been performed at an earlier time. As applied to judgments, in certain cases a judgment may be both rendered and entered *nunc pro tunc*, while in other classes of cases an entry *nunc pro tunc* presupposes a judgment actually rendered by the court, but not entered by the clerk.                •

"2.   Power to Make.—There is an inherent common-law power in the courts, independently of any statute, to cause the entry of judgments *nunc pro tunc* in proper cases and in furtherance of justice. This power belongs to all courts of record, and may be exercised by an appellate court as well as by the trial court. But such power must be exercised by the court; it does not appertain to the clerk of the court, who has no authority to enter a judgment *nunc pro tunc* without an order of court to that effect.                             .

"3.   Propriety and Grounds.—a. In General. A judgment will not ordinarily be directed to be entered *nunc pro tunc* unless it is shown that some injury or injustice will result from a refusal to do so, and particularly not to enable one party to gain an advantage over the other party to which he would not have been entitled at the proper time for entering the judgment. A void judgment should not be entered *nunc pro tunc*.

"b.   Discretion of Court.   A motion for entry of judgment *nunc pro tunc* is addressed very largely to the discretion of the court, and should be granted or refused as justice may require in view of the circumstances of the particular case.

"c.   Prior Rendition by Court.   A judgment *nunc pro tunc* presupposes a judgment actually rendered at the proper time, but not entered, and it is a general rule that a judgment *nunc pro tunc* cannot regularly be entered unless such judgment has been in fact previously rendered.   An exception to this rule, equally well established, is that a judgment may be both rendered and entered *nunc pro tunc* where the delay was caused solely by the court itself, or by the process of the law, and not by the fault of the prevailing party.

"d.   Cause Ripe for Judgment.   The power to enter a judgment *nunc pro tunc* can be exercised only in cases where the cause was ripe for judgment, that is, where the case was in such a condition at the date to which the judgment is to relate back that a final judgment could have been then entered immediately.

"e.   Fault of Moving Party.   Relief by entry *nunc pro tunc* will not be granted where the failure to enter the judgment at the proper time was due to the party's own carelessness or negligence.

"f.   Interest of Third Persons.   The object of allowing entries *nunc pro tunc* being the furtherance of justice, such entries will not be allowed where they will prejudice the rights of third parties who are without notice of the original rendition of the judgment.   As a general thing, the entry of a judgment *nunc pro tunc* will be made only on such conditions, expressed or implied, as will preserve the rights of third persons having no notice.   But it does not lie in the mouth of a party to object upon the ground that third persons will be affected.

"g.   Delay by Court in Rendering.   Whenever delay in entering a judgment is caused by the action of the court, as in holding the case under advisement judgment *nunc pro tunc* will be allowed as of the time when the party would otherwise have been entitled to it, if justice requires it.   The most frequent occasion for the application of this rule is where a party dies pending the delay, but other circumstances may justify and require rendition and entry *nunc pro tunc*."

While respondents do not raise this further question, we do not think this relief should be denied simply because of the delay which has ensued, involving the passing of several terms

of the court at Galveston. In this connection, we quote from 34 C. J., pp. 77-78, as follows:

"4. Time of Making.—The right to entry of a judgment *nunc pro tunc* is not barred by lapse of time, but may be made at any time, even at a subsequent term, in the absence of any statutory limitation, upon proper proceedings to that end, without any showing of diligence, although long unexplained delay in moving, or negligence or fault of the moving party causing the delay, may be ground for denial of the application for entry *nunc pro tunc*. The limitation applicable to proceedings to vacate, correct, or modify judgments have no application to a motion for entry of a judgment *nunc pro tunc*."

One of the cases cited by the author in support of the text last quoted, is that of Coleman v. Zapp, 105 Texas, 491, an opinion by Justice Phillips. In that case, "it was sought to amend the entry, *nunc pro tunc,* so as to include that which was omitted and thereby afford a faithful record of the whole judgment." The relief sought was granted and this action was approved by our Supreme Court. We quote from the latter's opinion as follows:

"We do not regard the question of laches as involved in the case. True, there was an interval of six years between the date of the rendition of the judgment and the application for *nunc pro tunc entry,* but laches means more than mere delay. The position of the parties had undergone no change; no intervening rights had accrued, and nothing was shown that made inequitable the granting of the order for a proper entry of the judgment. In the injunction case the plaintiff in error admitted in her pleadings that she owed the defendants in error the amount awarded; the judgment was therefore fairly rendered; it remained unsatisfied, and was accordingly but right and just that it should be entered so that it might possess the force and virtue to which as a judgment it was entitled.

"While it is our opinion that the right to have the entry of a judgment corrected or amended so as to truthfully speak the judgment as rendered, is not affected by statutes of limitation, we do not wish to be understood as holding that it may not be defeated by the laches of the party invoking it, under a correct application of that doctrine. It should be also stated that it can never be availed of to the prejudice of the rights of innocent third parties."

In the case of Lloyd v. Brinck, supra, the verdict of the jury was returned in May, 1871. On July 1, 1871, the proceeding

in mandamus was instituted in the Supreme Court. Precept was served on defendant and the answer was filed November 25, 1871. The Supreme Court awarded mandamus thereafter and before adjournment in 1872. Exact date does not appear in the reports. But, it is only fair to assume that the May term, 1871, of the District Court expired long before the Supreme Court decision was rendered. And, still, the mandamus was awarded and the District Court commanded to enter judgment, now for then, on the verdict as returned.

Of course, this precise question was not before Justice Greenwood in the Muse case, supra, for the term in that case was expressly extended by the District Court until the given case be completed.

The very basis of an entry of a judgment *nunc pro tunc,* is that an injustice is being prevented. Otherwise, no such entry will be authorized.

Under the facts present in the case at bar, we think the writ should issue. The cause is still pending on the docket in the trial court. The parties to the suit have lost no rights by reason of the delay; the rights of no third parties have intervened; the railway company, as shown by our statement of this case, exercised the very highest degree of diligence in seeking this relief; the delay has been unavoidable because of congestion of work in the courts themselves. Therefore, under all the rules and decisions, we think this relief should be granted just as was done in the case of Lloyd v. Brinck, supra.

It is true that this is a verdict upon special issues. But, having failed to convict the railway company of negligence the verdict was just as effectively for the defendant as would have been a general verdict for it. When the *necessary* effect of a special verdict is clear and plain, the writ of mandamus as prayed for herein should issue just the same as has been done in general verdict cases. In this particular statement we are probably pioneering, but our view seems to be based upon reasoning which is unanswerable.

By its order made November 20, 1924, the District Court, by *necessary implication,* overruled every objection raised against the verdict, except that the court thought it contained irreconcilable conflicts. The court committed manifest error in this conclusion, and, for that reason, had no right to set aside the verdict. On the other hand, it was his ministerial duty to enter judgment in accordance therewith.

We recommend that the writ of mandamus issue as prayed

for, commanding the respondent, Judge Canty, to enter now, as of date November 20, 1924, a judgment for relator in the case of Wright v. G., C. & S. F. Ry. Co. fully described in the pleadings herein.

*Mandamus granted.*

Opinion of the Commission of Appeals adopted and mandamus awarded as recommended by the Commission.

*C. M. Cureton,* Chief Justice.