KNOX et al. v. CRAVEN et al.

No. 12436.

Court of Civil Appeals of Texas. Galveston.

May 1, 1952.

Rehearing Denied May 11, 1952.

Kennedy & Granberry and F. P. Granberry, all of Crockett, for relators.

W. D. Julian, Jr., of Crockett, for respondents.

CODY, Justice.

By this original proceeding S. R. Knox et al., relators, seek by mandamus to require the Hon. V. M. Johnston, District Judge, one of the respondents, to render and enter the judgment prayed for in relators' motion for summary judgment which was filed February 13, 1952, in Cause No. 8033 on the docket of the District Court of Houston County, styled S. R. Knox et al. v. Sarah Craven, et vir.

The aforestyled suit is an action in trespass-to-try title involving some 190 acres of land in Houston County. One of the grounds urged for recovery therein by relators is the five year statute of limitations. Respondents answer in said action consists merely of a general denial and plea of not guilty.—It is sufficient to say of relators' pleadings in the aforestyled suit that they are sufficient to put in issue relators' right to recover under the said five year statute of limitations. Furthermore, there is no contention made by respondents herein but that relators' motion for summary judgment was sufficient as to form in all respects. Attached to said motion were: (1) A General Warranty Deed to the land in question under which relators assert their limitation claim of five years, and attached to said deed was a proper certificate of the county clerk of Houston County showing the same to have

been duly filed for record January 22, 1943, and to have been duly recorded in Book 214 of the Deed Records of said county, (2) a proper official certificate showing the payment of all ad valorem taxes on said land before they became delinquent for the years 1943, 1944, 1945, 1946, 1947, 1948, 1949, and 1950, (3) the chain of title under which relators claim beginning with the aforesaid deed of 1943, (4) the affidavit of one Ed Arnold stating in substance that he was familiar with the land described in aforesaid deed of 1943 and that affiant has resided in the vicinity of said land for his entire life and has known the land for over forty years. Affiant further swore that immediately following the delivery of the aforesaid deed of 1943 a Mrs. Hattie Sanders resided in a dwelling house on a portion of said land and executed an acknowledgment of tenancy and remained upon aforesaid land "until June or July, 1944, when at the request of said grantees (in the aforesaid deed of 1943) she vacated such premises and such residence was removed therefrom." Affiant further swore as to the written acknowledgment of tenancy executed between the owners of the land and one Leo Knox whereby Leo Knox went into possession of the land, except the portion occupied by Mrs. Hattie Sanders, and the affidavit further states that Leo Knox put upon said land certain fences so as to enclose all of the land in question along with the tract of land belonging to said Leo Knox and that said fence was a 3-strand barbed wire fence "sufficient to retain cattle grazing therein and to turn cattle grazing outside thereof which might otherwise stray thereon. The said Leo Knox immediately placed his cattle within such enclosure and grazed his cattle thereon each and every day until about the 15th day of October, 1950, when he surrendered possession thereof to S. R. Knox." Affiant further swore that the fences had been kept in cattle-proof condition at all times, and that the land was only suitable for grazing purposes, all other uses would have been unprofitable. Affiant further swore that the claims of relators "have been open and notorious and wellknown to the public in general and the use and possession has been open,

obvious and notorious and known to the public and has not been disturbed since the day of such January 1943 deed. * * *" Endorsed on aforesaid affidavit was a statement made by one Clarence Thompson wherein he swore that the facts stated in the foregoing affidavit were true.

In response to said motion for summary judgment the respondents Craven answered that the affidavit, purporting to show that relators had acquired title under the five year statute of limitation, is a mere skeleton showing of compliance with the requirements of the five year statute of limitation, i. e. that said affidavit is in general terms and sets forth conclusions and that in said affidavit it does not appear how many cattle were kept upon the land or when said cattle were placed thereon. Respondents further urged that relators ought not to be allowed to establish the acquisition of title by adverse possession by mere ex parte statements, particularly in view of the affidavit which respondents exhibited in connection with their answer and from which said affidavit so exhibited by respondents it was made to appear that the affidavit relied upon by relators was wrong with respect to cattle having been upon the land in question during the winter of 1948–49. The said affiant Craven swore, among other things, "I lived right here (within 200 yards of the land in question) during the years 1943 until now, but I can't honestly say that I remember when they put cattle on that place. I can say, however, that in the winter of 1948–49 there were not any cattle on that place. I crossed that place several times squirrel hunting, and during that time I lost a cow in that pasture and hunted for her for two or three days before I found her. For those reasons I can say that there were no cattle in there during that whole winter."

It is relators' position that the affidavit which they rely on as establishing their allegations for adverse possession under the five year statute of limitations fully establishes said adverse possession notwithstanding the break in the adverse possession or adverse user of said land during the winter of 1948–49. This, because prior to the winter of 1948–49 the adverse possession by the

terms of their said affidavit was shown to have matured, since more than five years had passed from the date they took possession under the deed of January 1943 and the winter of 1948–1949.

A hearing was duly had by the court upon relators' motion for summary judgment and refused.

■ It was the duty of respondent Johnston, upon the hearing on the motion for summary judgment under Rule 166–A, T.R.C.P., to determine whether "the pleadings, depositions, and admissions on file together with the affidavits, * * * show that * * * there is no genuine issue as to any material fact * * *", and to so determine whether the moving party was entitled to judgment as a question of law. It is self-evident that such a hearing and determination is the exercise of a judicial, as distinguished from a ministerial, function. No doubt the Supreme Court has jurisdiction to relieve against a manifestly arbitrary refusal by a district judge to grant a motion for summary judgment. See Southern Bag & Burlap Co. v. Boyd, District Judge, 120 Tex. 418, 38 S.W. 2d 565; and R.C.S. Article 1733. The cited Article empowers the Supreme Court to issue the writs therein mentioned (including writs of mandamus), "agreeable to the principles of law regulating such writs, against any district judge * * *."

■■ However, Courts of Civil Appeals have only the power to issue writs of mandamus as provided for in R.C.S. Articles 1823 and 1824, Vernon's Ann.Civ.St. arts. 1823, 1824. Ridley v. McCallum, District Judge, 139 Tex. 540, 542, 163 S.W.2d 833. This power of Courts of Civil Appeals, under Article 1824, is merely the power to compel the trial judge "to proceed to trial and judgment in a cause," not the power to control the character of the judgment to be entered by him. Yantis v. McCallum, Judge, Tex.Civ.App., 121 S.W.2d 610. Relators are not here complaining that respondent Johnston did not proceed to hear the motion for summary judgment and render judgment thereon. Their grievance is solely with the character of judgment rendered.

■ It is indeed well settled that where a district or county judge refuses to enter a judgment on a special verdict, he can be compelled by force of Article 1824 to enter the judgment called for by the special verdict. Gulf C. & S. F. Ry. Co. v. Canty, District Judge, 115 Tex. 537, 285 S.W. 296; Cortimeglia v. Davis, Judge, 116 Tex. 412, 292 S.W. 875. But "in those cases, there has been a trial establishing the facts in issue. The sentence of the law follows as a ministerial duty." Willis v. Granger, Tex.Civ.App., 195 S.W.2d 831, 833. So, if we are right in our conclusion that the order entered upon a hearing for summary judgment is not a mere sentence of the law, without any aid from the exercise of the judicial function, upon the pleadings, depositions and admissions on file, together with the affidavits, showing there is or is not a genuine issue as to a material fact, this Court is without power to issue a mandamus to compel respondent Johnston to enter any particular character of judgment on the hearing on said motion for summary judgment.

■■ Furthermore, in the light of the counter-affidavit filed by respondents Craven, we are unable to say that the refusal of respondent Johnston to accept the affidavit of relators (as sufficient to establish the divestiture of title out of the owners of the record title) is an abuse of discretion. This, because the counter-affidavit filed by respondents Craven, if true, established that the affiants were mistaken, at least with reference to the character of the adverse user and possession in the winter of 1948–1949. It may well be that upon a trial of the cause relators may establish that they had matured title by adverse possession prior to the winter of 1948–1949. But in view of the demonstrated inaccuracy of relators' affidavit (assuming, as we must for present purposes, that the counter-affidavit was true), we cannot hold that the trial court abused his discretion in concluding that relators' affidavit did not show that there was no genuine issue as to any material fact.

The prayed for writ of mandamus is refused.