Barbara Sue **DOUGLAS**, a Minor, by Mildred Dehtan, Next Friend, Appellant,

v.

Harold **CORDER**, et ux., and Henry Hobson Whitney, Appellees.

No. 7229.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 18, 1963.

Rehearing Denied March 11, 1963.

Cade & Bowlin, Lubbock, for appellant.

Splawn & Maner, Crenshaw, Dupree & Milam, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal from a jury verdict in an action for negligence filed by appellees, Harold Corder and wife, Jean Corder, against appellant, Barbara Sue Douglas, a minor, by Mildred Dehtan, her mother as next friend and against Henry Hobson Whitney. On issues submitted the jury found $9,000 damages for injuries sustained by Jean Corder and $3,000 for medical, hospital, and doctors' bills already accumulated and which in reasonable probability would be necessary in the future. A remittitur was required of $1,200 for the latter expense and judgment was rendered for $10,800 jointly and severally against Barbara Sue Douglas and Henry Hobson Whitney. It is from that judgment that Barbara Sue Douglas, by Mildred Dehtan, as next friend has appealed.

The first point with which we are presented is a contention that the case must be reversed because no guardian ad litem was appointed for Barbara Sue Douglas, a minor 17 years of age at the time of the trial. The brief of the point seems to be leveled at the fact that under such circumstances it is necessary to appoint a guardian ad litem. Rule 173 VATR seems to be clear on the point that a guardian ad litem

would have to be appointed under the circumstances but the contention that a guardian ad litem was not appointed is contrary to the record before us.

The first judgment entered on February 23, 1962, neglected to show the appointment of the guardian ad litem for the minor. The court on June 20, 1962, in a nunc pro tunc order showed that he actually had appointed the minor's natural mother Mildred Dehtan as guardian ad litem prior to the hearing of any testimony, which order shows the following notation on the docket sheet:

"February 5, 1962—jury selected. To trial. Girl's mother appointed guardian ad litem."

The actual fact of the appointment is recognized in a motion for judgment filed by appellant following the verdict, which motion states:

"Now come the defendant, Barbara Sue Douglas, and her guardian ad litem, Mildred Dehtan *duly appointed by the court,* * * *" (Emphasis added.)

In view of the record in this case it would constitute an injustice not to enter the nunc pro tunc order and judgment simply because the court or the attorney drawing the judgment neglected to show the appointment in the judgment. "The very basis of an entry of a judgment nunc pro tunc is that an injustice is being prevented." Gulf, C. & S. F. Ry. Co. v. Canty, 115 Tex. 537, 285 S.W. 296 (Com.App. opinion adopted).

The next contention presented is that Barbara Sue Douglas was, as a matter of law, acting in an emergency not produced on her part and should be exculpated of any liability even though the doctrine was not pleaded as a defense and no issue requested or given inquiring as to whether she was acting in an emergency.

Prior to the collision furnishing the genesis of the cause of action alleged by plaintiffs against defendants, Mr. and Mrs. Corder were parked in their automobile on 50th Street facing west in the city of Lubbock. There was a stop sign requiring a stop before proceeding from 50th Street onto Avenue A constituting the intersection with 50th Street. Defendant Whitney was proceeding eastward on 50th Street. There was also a stop sign on his side of Avenue A. Whether he had or had not stopped before proceeding into the intersection is immaterial in view of the various grounds of negligence found against him.

Defendant Barbara Sue Douglas was proceeding down Avenue A from the south, traveling north from Mr. Whitney's right and from the Corders' left, traveling approximately 45 miles per hour in a 50 mile zone for Avenue A. The left front of her car collided with the right rear of the Whitney car in the intersection and knocked it into the Corder car, causing a whiplash of Mrs. Corder's neck and the serious injuries from which she was still suffering at the time of trial.

The testimony shows without contradiction that it was a cloudless day on June 19; that it was approximately 7 p. m.; that the sun was still shining brightly; that the roads were completely dry; and that for at least 1,550 feet in the direction from which Barbara Sue Douglas was approaching there was a clear view of the intersection.

The testimony shows Mr. Whitney proceeded into the intersection very slowly, from 5 to 7 miles per hour, and that after he started into the intersection he looked neither to the right nor left. The Statement of Facts shows the case was tried before the jury with a drawing of the intersection before them and the placing of marks on the drawing by the witnesses to indicate the position of the cars. That drawing was not brought forward and the testimony is such that it is not completely clear just exactly where the Whitney car was at the time of the impact with the car

being driven by Barbara Sue Douglas.[1] Mr. Corder testified the Whitney car was completely off the pavement at the time appellant's car hit the Whitney car and that it skidded broadside into his car, the left rear hitting the left front of his car and then turning over on its side.

The jury found Mr. Whitney was negligent in driving too slowly; in failing to keep a proper lookout; and in failing to yield the right of way to Barbara Sue Douglas, and that each of such actions constituted a proximate cause of the collision. None of his acts were found to be the sole proximate cause of the collision.

Miss Douglas, who was driving her mother's car with her permission at the time, was acquitted of failure to keep a proper lookout; of driving at a greater rate of speed than an ordinary prudent person; of turning to the right off the pavement; and of failing to yield the right of way. They found her guilty of failure to apply her brakes as soon as a person of ordinary prudence would have done so, and that such failure was a proximate cause of the collision.

The record is void of any pleadings of sudden emergency and no issue was requested on the subject.

■ In researching this question of sudden emergency we have found numerous theories and many loose statements on the subject. For example, one authority indicates the "fright, terror or panic doctrine" [imminent peril] and "sudden emergency" are separate doctrines. Jones v. McIlveene, Tex.Civ.App., 105 S.W.2d 503. We believe the terms are synonymous and technically may be used interchangeably. The discussions by the Supreme Court in Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386 in which the court refers to them interchangeably seems to us to so indicate.

Our Supreme Court in the landmark case of Beck v. Browning, 129 Tex. 7, 101 S.W. 2d 545 set out four principles governing liability in sudden peril. As applied to the facts of our case they would require that:

1. The peril was caused by Mr. Whitney.

2. The apprehension of peril on the part of Miss Douglas must have been reasonable.

3. The apprehension of danger must have been so imminent as to leave no time for deliberation.

4. The negligence, if any, of Miss Douglas must not have concurred in bringing about a situation of peril, or contributed in creating the startled, dazed, or confused condition of her mind.

■ In applying the "sudden emergency" or "imminent peril" doctrine to the facts before us, we are of the opinion that the record did not require the trial court to grant appellant's motion for instructed verdict on the "sudden emergency" theory, the record showing that was the first time it was raised in the case. Furthermore, we do not believe the probative evidence established the existence of an emergency.

Though the jury found Miss Douglas did not fail to keep a proper lookout, the finding was contrary to the great weight and preponderance of the evidence. That point was not raised as a counterpoint but in passing upon the question of whether appellant was guilty of negligence prior to the emergency we would, from this record, have to say, regardless of the jury finding to the contrary, that she failed to keep a proper lookout on the occasion in question. As heretofore stated, it was a cloudless day, the sun was still shining brightly, the roads were dry and she could see the in-

---

1. Statements such as a certain car was "about there" give us no information whatever to go by since "about there" is not explained in the record before us.

It is obvious this case was tried for the benefit of the trial court and jury and not for an appellate court.

tersection at least 1,550 feet before she arrived at it. Mr. Whitney was, according to the record, going no more than 7 miles per hour. Appellant's own brief states Mr. Whitney traveled 40 feet from the stop sign before he even reached the pavement on Avenue A. As we understand the testimony he was struck either after he had just cleared the pavement or on the east side thereof. By her own testimony Miss Douglas was going more than six times as fast as Mr. Whitney and would therefore have been as much as 240 feet south of the place of collision at the time Mr. Whitney left the stop sign to proceed onto Avenue A. The evidence is without contradiction that as she approached there were no objects to prevent a clear view of the intersection. If she had been maintaining such a lookout as a reasonable and prudent person, in the exercise of ordinary care would have maintained under the same or similar circumstances, she could not have kept from seeing Mr. Whitney in time to have avoided the collision. Our Supreme Court in Goolsbee, supra, has approved the following definition of emergency in connection with the doctrine here under discussion:

" 'By the term 'emergency', as used in this charge, is meant a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation.' "

Accordingly, under our Supreme Court's approved definition in Goolsbee and the principles approved by that court in Beck v. Browning, supra, as governing liability in cases of sudden emergency or imminent peril the doctrine is not applicable in the instant case even if it had been properly raised.

■■ The next contention made by appellant is that the court erred in his charge in requiring the same degree of care as would be required of an adult. Neither in the definitions nor in the issues was the word "adult" used and conversely the word "minor" was not used nor was Miss Douglas' age mentioned. She was 16 years of age at the time of the collision, possessed a driver's license with no restrictions attached to it, was an employee in a restaurant in the city of Lubbock and had been driving with full license for a year. The issue complained about asked if she failed to apply her brakes as soon as a person of ordinary prudence would have applied them. Negligence was defined as the

"doing of that which a person of ordinary prudence would not do under the same or similar circumstances, or the failure to do that which a person of ordinary prudence would do under the same or similar circumstances."

Our Supreme Court has held that under such circumstances if a 16 year old is "wanting in discretion or laboring under the handicap of some mental defect the burden was [is] upon him to establish that fact." Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063. The presumption is that Miss Douglas was normal. Seinsheimer, supra. We have found no authority by the Supreme Court changing their rules announced in the case from which we have just quoted so feel compelled to follow that authority. Therefore, the point is without merit.

■ The next point urged is that the court committed reversible error in refusing to submit an issue on unavoidable accident. There is sufficient evidence to support findings of negligence on the part of both Barbara Sue Douglas and Mr. Whitney which proximately caused or contributed to cause the collision. Obviously then, the pronouncements by our Supreme Court as to what constitutes a proper definition of the term "unavoidable accident" would show the instant case to be an improper one for a submission of the question. Airline Motor Coaches v. Fields, 140 Tex. 221, 166 S.W.2d 917 (Com.App. opinion adopted).

Accordingly, the judgment of the trial court is in all things affirmed.