## D. A. O'Meara, Gdn. et al v. Hon. W. W. Moore, District Judge et al.

No. 8189. Decided March 15, 1944.
(178 S. W., 2d Series, 510.)

*A. D. Dyess,* of Houston, for petitioner.

*Lewis Fogle,* of Houston, for respondent.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

Mrs. Ruth Maness was the mother of four minor children at the time of the death of her husband, Luther Maness. The husband was accidentally killed and as a result of the accident his wife and four minor children procured judgment (by compromise) in one of the district courts of Harris County, $1,000.00 of which was prorated to the children and deposited with the clerk of the court. Thereafter the children's fund was withdrawn from the registry of the court in the manner hereafter stated. Mrs. Maness remarried, her second husband being D. A. O'Meara.

Mrs. Maness-O'Meara, joined pro forma by her husband, in his individual capacity and also as guardian of the minor children, filed this suit against Mrs. M. L. Brown, a feme sole, J. F. Taylor and the Sun Oil Company, seeking to recover title and possession of a quarter section of land conveyed in 1922 by Perry V. Cook to Mrs. Maness' first husband. Cook intervened in the suit, complaining of Mrs. Brown and the other defendants, Taylor and the Oil Company seeking recovery of the land. His petition in intervention was filed by the attorney who was then representing plaintiffs, Mrs. Maness and her husband, D. A. O'Meara, in their individual capacities, and Mr. O'Meara in his capacity as guardian of the minor children of Mrs. Maness by her first husband. Plaintiffs' attorney after filing Cook's petition of intervention, amended the original petition filed by him on behalf of plaintiffs, respectively, in the capacities stated, praying as in the original petition, and continued throughout the trial to represent, and now represents as attorney for petitioners here (plaintiffs and intervenor below) in their application for writ of mandamus.

Plaintiffs' original petition is not included in the transcript before us. They alleged in their first amended original petition against Mrs. Brown and intervenor Cook that title to the land became vested in Mrs. Brown as trustee for the use and benefit of Mrs. Maness and the minor children at the time the $1,000.00 belonging to the children was withdrawn from the registry of the court; that the condition of the conveyance of the land by

Cook to Luther Maness above referred to was $1,700.00 cash and $5,500.00 evidence by 15 vendor's lien deed of trust notes payable to Cook for the sum of $300.00 each and one note (No. 16) for the sum of $1,000.00, payable to Cook, all constituting a series of notes payable one each year for 15 consecutive years, the note for $1,000.00 being payable 30 days from date; that as a further consideration for the conveyance Luther Maness assumed payment of the balance of a $2,400.00 note signed by Cook which had been acquired by the Land Bank, and which, together with the lien securing payment thereof, constituted a first lien against the land superior to any claim of right held by Cook in and to the land.

Plaintiffs alleged that the $1,000.00 note was paid by Luther Maness to Cook, but that none of the 15 smaller notes were paid prior to the death of Maness on Mach 20, 1932; that Cook on October 3, 1933, purchased the land under his deed of trust foreclosure sale.

Plaintiffs alleged also that the Federal Land Bank loan had been made through Katy Farm Loan Association which held a lien against the land for about $130.00 "on account of taxes and perhaps other items paid by the Association"; that the Association foreclosed its lien (superior to Cook's) and on February 5, 1936, purchased the land at the foreclosure sale; and further alleged that the Association conveyed the land to Mrs. Brown on March 4, 1936, upon consideration of her note for $130.00 and the assumption by her of the balance due the Land Bank.

Plaintiffs alleged that Mrs. Brown, by becoming one of the requisite sureties for Mrs. Maness in procuring for her another surety (for the consideration of $100.00), enabled Mrs. Maness to withdraw the children's $1,000.00 fund from the registry of the court and use same to the extent of $831.30 in payment of the arrears due the Lank Bank; that the funds thus withdrawn by Mrs. Maness were, to the extent stated, paid by her on November 21, 1935, to the Land Bank on its then past due first lien indebtedness; that thereafter Mrs. Brown represented to Mrs. Maness that she (Mrs. Maness) had done a foolish thing in withdrawing the children's money and paying it on the indebtedness to the Bank in view of Cook's having foreclosed his lien, and advised Mrs. Maness to inform the officials of the Land Bank that the $831.30 paid by Mrs. Maness was paid out of the funds of her minor children, and that it was Mrs. Brown's money that was paid and that Mrs. Brown was entitled to an assignment of the bank's lien to the extent of that amount. Plaintiffs al-

leged that the Bank upon being so informed by Mrs. Maness, issued and delivered to Mrs. Brown an assignment of its first lien to the extent of $831.30 upon Mrs. Maness' request that it do so; that thereafter Mrs. Maness executed a quitclaim deed to Mrs. Brown *on behalf of herself and as next friend of her minor children,* but that it was executed without consideration and was ineffectual to pass the title of the children, Mrs. Maness never having qualified as their guardian; and that the quitclaim deed was delivered to Mrs. Brown for the sole purpose of placing in her the legal title to the land. Plaintiffs alleged that Mrs. Brown 'agreed to hold the land for the use and benefit of Mrs. Maness and her children.

Plaintiffs alleged further, in substance, that the foreclosure by the Farm Loan Association of its lien above referred to was procured by Mrs. Brown under an agreement with the Land Bank and with the Association that it (the Association) would sell and convey the land to her.

Plaintiffs alleged also that certain rents and revenues had been received from the land *on account of the execution of two oil leases thereon,* the payment of delay rentals, and the sale of an easement for a pipe line across the land; that Lewis Fogle was Mrs. Brown's attorney and claimed to have advanced certain moneys in payment of installments due the Land Bank, and taxes, the aggregate amount being in excess of $3,000.00. Then followed plaintiffs' statutory allegations in trespass to try title.

Mrs. Brown answered, among other things, to the effect that Cook's foreclosure of his lien divested Mrs. Maness-O'Meara and her children of all title and interest in the property and that plaintiffs' allegations that Mrs. Maness had conveyed the land to Mrs. Brown for the purpose of defrauding Cook and to save the land for plaintiffs estopped them from recovery thereof. She pleaded against plaintiffs a general denial, not guilty, and a special denial of any agreement made by her to hold the land in trust for Mrs. Maness and her children. She alleged also the consideration paid by her for the land, the statute of frauds, the statutes of limitation (3, 4 and 5 years) the payment of taxes and indebtedness secured by liens on the land and the making of improvements and repairs thereon.

Mrs. Brown pleaded in answer to the allagations of intervenor Cook that all title and interest in the land was divested out of him by the foreclosure and sale thereof to the Farm Loan Association, and denied that the money paid the Land Bank was other than her own, or that she furnished same for the

purposes alleged. She made other allegations in response to Cook's petition in intervention similar to those made by her against plaintiffs.

Defendant Lewis Fogle adopted the allegations of Mrs. Brown in answer to plaintiffs' and intervenor's amended petition and also alleged that, without notice of the claims of intervenor and plaintiffs and in reliance on Mrs. Brown's record title, he (Fogle) had, at the instance of Mrs. Brown, and to prevent the lands being lost by foreclosure, advanced moneys which were applied to the payment of installments secured by superior liens and that he had taken assignments of same to the amount of $1,712.67 and that he had advanced money for necessary repairs amounting to about $500.00.

The defendants Taylor and Sun Oil Company, by leave of the court, filed disclaimers and it is unnecessary to make further reference to them.

The jury found in response to the special issues submitted that Mrs. Brown and Mrs. Maness intended by having the Land Bank assign a portion of its first mortgage on the land, to delay or defeat Cook in the collection of money due him under his second mortgage lien; that the transaction whereby a quit-claim deed to the land was signed and delivered by Mrs. Maness to Mrs. Brown, was had with the intention on their part to defeat the collection of the money due Cook; that Mrs. Brown, in purchasing the land from the Farm Loan Association, did so in furtherance of the intention of Mrs. Brown and Mrs. Maness to delay or defeat Mr. Cook in the collection of the money due him; that Mrs. Brown, in taking an assignment of a portion of the Bank's first mortgage lien, agreed to hold same for the use and benefit of Mrs. Maness and her children; that Mrs. Brown never repudiated such trust, but that in taking the quit-claim deed from Mrs. Maness Mrs. Brown agreed to hold the land in trust for her and her children, and did repudiate that trust; that Mrs. Maness did not know of such repudiation more than four years before April 6, 1942, the date of filing this suit; that Mrs. Brown, in taking the deed from the Loan Association dated March 4, 1936, agreed to hold same for Mrs. Maness and her children, and repudiated such trust; that Mrs. Maness did not know of such repudiation more than four years prior to the filing of this suit; that Mrs. Maness did, on or about November, 1935, borrow from Mrs. Brown $832.00 for the purpose of paying same to the Land Bank; that the $831.30 paid the Bank was paid by Mrs. Maness out of funds belonging to her minor

children; and that Mr. Cook did not know more than four years prior to the filing of this suit that such sum was not paid to the bank by Mrs. Brown.

On May 29, 1943, counsel for plaintiffs and intervenor filed a motion for judgment upon the verdict and attached thereto a form of judgment reciting that the motion was for judgment *upon the verdict and upon the findings of fact by the court.* The judgment form contained the following provision:

"* * * that judgment be entered vesting in * * * Cook title to and possession of an undivided one-half (1/2) interest in and to said land, subject to such rights, if any, as * * * plaintiffs may have in and to such undivided one-half (1/2) interest, and that judgment be entered vesting in D. A. O'Meara, Guardian * * * title to and possession of the remaining undivided one-half (1/2) interest in and to said land, subject to such rights, if any, as * * * Cook may have in and to such undivided one-half interest, whether as owner, lien holder *or by virtue of contract.*"

The judgment form also contained the following provision:

"And it further appearing to the Court that under the pleadings of the plaintiff * * *, D. A. O'Meara (Guardian) and * * * Intervenor, no conflict of interest * * * was made known or * * * asserted, the undivided one-half (1/2) interest in said land hereby awarded unto said plaintiffs on the one part, and the said intervenor on the other part, is expressly awarded to them, respectively, without any prejudice whatsoever, now or hereafter, to any claim, title, right or demand which the said plaintiffs may hereafter assert against the said Perry V. Cook, and likewise, without any prejudice, now or hereafter, to any claim, title, right or demand which the said Perry V. Cook may hereafter assert against said plaintiffs to said land, whether by way of title, lien holder or *by reason of the contract between the said plaintiffs and intervenor of date the 29th day of March, 1942, which said guardian was authorized by order of the Probate Court to execute with said intervenor.*" (Italics ours).

The form of judgment originally submitted by plaintiffs and intervenor before the death of the judge who tried the case contained the following paragraph:

"All issues as to all parties not hereby expressly disposed of are hereby adjudged and decreed in favor of intervenor, Perry V. Cook, as against any and all other parties to this suit."

The present judgment form, which was substituted for the original form, contains the following paragraph in lieu of the foregoing paragraph:

"All issues between * * D. A. O'Meara, Guardian * * *, and intervenor * * * Cook, on the one part, and the defendants * * * on the other part, now expressly disposed of herein, are here now adjudged and decreed in favor of said plaintiffs and said intervenor."

Defendants filed a motion for judgment in their favor notwithstanding the verdict, alleging, among other things, that there was no evidence of any agreement that Mrs. Brown purchased the land from the Farm Loan Association for the benefit of plaintiffs.

The respective motions for judgment were argued before Judge Norman Atkinson, who had conducted the trial. He took the matter under advisement but died about May 14, 1943, without having rendered judgment. He was succeeded in office by Judge W. W. Moore. Judge Moore upon having the motions for judgment presented to him for consideration declined to enter judgment in the cause upon either motion before him and declared a mistrial. Plaintiffs and intervenor filed in the Court of Civil Appeals at Galveston their motion for leave to file a petition for mandamus against Judge Moore requiring him to render and enter judgment substantially in the form prayed for by plaintiffs and intervenor in their motion for judgment described and quoted from above. The Court of Civil Appeals denied the relief sought without written opinion. A few days later plaintiffs and intervenor, as petitioners, filed in this Court motion for leave to file the accompanying petition for mandamus, alleging that they were seeking the identical relief sought by them in the Court of Civil Appeals. The motion was granted, and the record is now before us for final consideration.

Between the time this Court granted petitioners leave to file their petition for mandamus and the time of its submission and argument thereon, counsel for respondent procured an amendment of, or supplement to, the original transcript accompanying the petition, apparently as a basis for strengthening his contention that the interests of the minor plaintiffs and intervenor, as well as the interests of Mrs. Maness and intervenor, are adverse and antagonistic; and that a writ of mandamus should not lie to compel a trial judge who did not try the case to enter a judgment upon motion of an attorney representing here, as he did in the proceedings below, the parties whose interest, it is contended, are antagonistic.

■ Since we entertain the view that the petition for mandamus should be denied for another reason urged by respondents we find it unnecessary to discuss the facts disclosed in the supplemental record. Whether counsel for petitioners may properly represent upon another trial the interests alleged to be antagonistic, should be determined by the trial judge.

Respondents contend that Cook was not entitled to recover a judgment for the land as provided in petitioners' judgment form unless the trial judge had no other alternative than to find that the title acquired by the Farm Loan Association in foreclosing its lien and purchase of the land exercised bad faith. The Association's deed of trust lien was superior to Cook's rights, and unless bad faith was exercised by the Association the foreclosure sale wiped out whatever right, title or interest Cook had. Whether the Association did not act in good faith and without involvement of anyone else in making the foreclosure sale of the land was not submitted to the jury, yet it would have required a finding of bad faith against the Association by either the jury or the court in order to prevent the foreclosure from constituting a divestiture of Cook's title and claim. No such inquiry was submitted to the jury and none was requested. We do not have before us, however, the question of whether bad faith must be presumed in favor of a judgment awarded by the trial court to plaintiffs and intervenor. None was rendered upon either motion presented to the court. It appears from the evidence cited in petitioners' written argument filed in response to respondent's contention of no evidence of the Association's bad faith that both Mrs. Brown (the witness testifying) and the attorney for petitioners in questioning her were referring to the matter of foreclosing a lien other than the Association's lien. The Association was not mentioned in the evidence cited. The evidence certainly did not establish as a matter of law bad faith on the Association's part. The judge on finding it either did or did not acquire the land at the foreclosure sale in bad faith would be exercising a judicial, and not a ministerial, function.

■■ It is settled that a trial court cannot be compelled by mandamus to make particular findings. Missouri K. & T. Ry. Co. v. Price (Com. App.), 116 Texas 241, 288 S. W. 415; Southland Greyhound Lines, Inc. v. Richardson (Com. App.), 126 Texas 118, 86 S. W. (2d) 731. It appears from the judgment form itself attached to plaintiffs' and intervenor's motion for judgment that the judgment therein provided was a judgment for Cook upon the "verdict of the jury and upon the findings of fact by the court as to issues not submitted to the jury." In order to

render judgment for Cook, as well as for plaintiffs, it is apparent that Judge Moore (who had not tried the case) did not, upon the record before him, feel impelled to render a judgment in accord with either the motion of plaintiffs and intervenor, or that of defendants. His order, after specifically declining "to enter judgment for either plaintiffs, defendants, or intervenor" states that he "declares a mistrial." He took what was apparently "a short cut" to bringing about another trial of the case. Regardless of whether such action was proper (which we do not determine), the petitioners' application for mandamus should be denied for the reason pointed out.

■ It is not necessary to consider the matter of other issues not submitted to the jury, which are alleged to be necessary to be determined by the Court as a prerequisite to rendering judgment, such as the issues of limitation which were pleaded by defendants against Cook as well as plaintiffs; also defendant Fogle's right to recover the sums received by him and turned over to Mrs. Brown, as well as sums credited to her by making application to debits not related to the land transactions, attorney's fees for services rendered concerning the land, and other matters which, defendants contend, require the exercise of a judicial rather than a ministerial function by the trial judge in order for him to render judgment.

Petitioner's application for mandamus should be denied, and it is so ordered.

Opinoin adopted by the Supreme Court March 15, 1944.