### BROWN et al. v. O'MEARA et al.
### No. 11723.

Court of Civil Appeals of Texas. Galveston.

March 7, 1946.

Rehearing Denied April 11, 1946.

John C. Townes, Sam W. Levy, and Lewis Fogle, all of Houston, for appellants.

Dyess & Dyess, of Houston, for appellees.

CODY, Justice.

This suit was instituted by plaintiffs for title and possession of a quarter section of land in Harris County, against Mrs. M. L. Brown, Lewis Fogle, Esq., and certain defendants who disclaimed, and so who need not be named. Perry V. Cook intervened in the suit as a plaintiff. To understand the pleadings of the plaintiffs, and the intervener, Cook, it is deemed advisable to state certain of the facts about which there is no dispute.

On November 11, 1922, the aforesaid Cook conveyed the land in question to Luther F. Maness by general warranty deed, for the cash consideration of $1,700, and for fifteen notes totalling $5,500, which were executed by the said Maness, and made payable to Cook, and for the assumption by said Maness of certain notes held by the Federal Land Bank·of Houston, totalling $2,400. The indebtedness so held by the Land Bank was secured by a prior superior deed of trust lien. And the notes given by Maness to Cook were secured by a second deed of trust lien. Cook assigned one of the Maness notes to the Federal Land Bank, which note was for the principal sum of $1,000, together with the lien securing it, and subordinated the lien retained by him securing the remaining Maness notes to the lien transferred to the Land Bank to secure the $1,000.

Thereafter, on March 20, 1932, said Luther F. Maness was killed in a railroad accident. And the widow brought suit in behalf of herself and children for damages in the District Court of Harris County. She and her children are plaintiffs in this suit. The damage suit for the death of Maness was settled, and under such settlement the children were awarded $1,000, which was paid into the registry of the court. Thereafter, on the first Tuesday in October 1933, the Maness notes held by him being in default, Cook caused his second deed of trust lien to be foreclosed, and he bought in the land at such foreclosure sale, and promptly placed the trustee's deed to himself of record. For reasons not ex-

pressly disclosed by the record, he never went into possession of the land.

The Katy National Farm Loan Association was the agent through which the Land Bank obtained the loan on which said Bank held the first lien against the land. After Cook had foreclosed his second lien notes, the Bank, acting within the terms of the loan, re-transferred to the Loan Association $130 of the loan which had become delinquent. And thereafter the Loan Association foreclosed the lien which it held to secure said $130. To anticipate—at this point we will state that it was the contention of Cook that the foreclosure by the Loan Association of the $130 lien was merely a simulated transaction, conducted for the purpose of hindering, delaying and defrauding him, Cook, in the collection of his debt.

At all material times, Mrs. Maness was either the wife or widow of Luther F. Maness. She married Mr. O'Meara before this suit was filed; but for convenience she will here be referred to as Mrs. Maness. Mr. O'Meara has joined her pro forma as plaintiff in this suit, and qualified as guardian of the estates of her minor children, and in such capacity has sued herein as plaintiff for said minor children. Mrs. Maness's oldest child had ceased to be a minor before this suit was filed, and has joined as plaintiff. She—Mrs. Orma Riley —was joined pro forma by her husband.

After alleging the foregoing facts, about which there is no dispute, plaintiffs also alleged:

That after the death of Luther F. Maness, Mrs. Maness leased the land to the defendant, Mrs. Brown. That Mrs. Brown gained an ascendency over mind and will of Mrs. Maness. That at the time Cook foreclosed his second lien notes, Mrs. Maness and the estate of Luther F. Maness were delinquent on the payments due to the Land Bank. And said Bank was demanding that such delinquency be paid up, and was threatening to foreclose if it was not so paid up. That the defendant, Mrs. Brown, learned about the children's money which was deposited in the registry of the court, and proposed that this money be obtained and used to pay up the delinquency. That, following the proposal of Mrs. Brown, $831.30 of said money (Belonging to the Maness children) was withdrawn from the registry of the court and paid over to the Land Bank, but the same was

paid over to the Land Bank as having been furnished by and belonging to defendant, Mrs. Brown. And the Bank assigned said indebtedness, so delinquent in the sum of $831.30, and the inferior lien securing it, to defendant, Mrs. Brown.

That it was then decided, upon the advice of Mrs. Brown, that Mrs. Maness was not to pay the $130 due the Loan Association, but was to seek to have the same foreclosed, thereby "wiping out the subordinate lien indebtedness and sale at trustee's sale to the said Perry V. Cook." And it was further decided that Mrs. Brown would act for Mrs. Maness and children in buying in the property. And said lien, securing said indebtedness in the sum of $130, was purportedly to be foreclosed at trustee's sale on the first Tuesday in February 1936. And by prearrangement with the Land Bank and the Loan Association, the land was bought in by the Loan Association. And that, pursuant to said plan, the Loan Association executed its deed dated March 4, 1936, conveying the property to Mrs. Brown upon the consideration of her giving her note for $130, and assuming the outstanding indebtedness due the Land Bank. And that Mrs. Brown took said deed as trustee for Mrs. Maness and children.

That it was agreed that Mrs. Maness was to deed by quit-claim the naked legal title to the land to Mrs. Brown, to hold the land in trust for Mrs. Maness and children. And pursuant to the agreement of Mrs. Brown to hold the title in trust for Mrs. Maness and children, Mrs. Maness acting for herself and as natural guardian and next friend of her children, quit-claimed the land to Mrs. Brown on February 13, 1936, which quit-claim deed was not recorded until January 5, 1940.

Plaintiffs go on to allege, among other things, that Mrs. Brown leased the land for oil, etc. And prayed for title and possession of the land and damages.

Cook was represented by the same attorney that represented plaintiffs. And in his plea of intervention he adopted the allegations of their petition. He alleged further:

That following the foreclosure of his second lien, and prior thereto, he had inquired of the Land Bank as to the state of the prior lien indebtedness, and was advised prior to November 21, 1935, (the date of the assignment of the delinquent por-

tion of the loan in the sum of $831.30 to Mrs. Brown), as to such delinquency and the amount of it. And that he was also advised by the Bank that Mrs. Brown had paid same for the account of Mrs. Maness and children, and had taken an assignment of the Bank's superior lien, securing it. That subsequently he duly received notice that the lien securing the payment of the sum of $130 held by the Loan Association, and attended such foreclosure sale. That said sale was also attended by Mrs. Maness and by Mrs. Brown (whom Cook did not then know). That though he attended the sale, he did not bid on the property because of the representations of the Bank that the delinquent part of the debt had not been paid by Mr. Maness nor Mrs. Maness, nor the Maness Estate, but had been paid by Mrs. M. L. Brown, and was therefore still due on the property, secured by a lien.

That the effect of such representations was to misrepresent for whose account the payment of $831.30 was made, and to misrepresent the amount of indebtedness still remaining unpaid and outstanding against the land. That had intervener been told said $831.30 had been paid, and that the Manesses were not in arrears to the Bank, he would have paid the sum of $130 due the Loan Association, and prevented its foreclosure.

That Mrs. Brown and Lewis Fogle, Esq., whatever their intention, held the title to the land in trust for intervener Cook. That intervener, when he borrowed the money originally from the Bank, by the rules of the Bank, was required to purchase stock in the Bank to amount of 5% of his loan. And that he purchased stock of the Bank to the face value of $130. That upon the sale of the land to Maness, intervener—to qualify him in the assumption of the loan—transferred such stock to the extent of $130, only as a matter of accommodation. And such stock was, therefore, additional security for the indebtedness held by the Loan Association, at the time of the purported foreclosure. And the amount of said stock was in excess of the past due indebtedness, and the Association, therefore, should have applied the stock to its debt, and had no right to make the sale. The answers of defendants will sufficiently appear hereafter.

On June 2, 1944, the defendants formally filed in court a suggestion that the interests of plaintiffs, some of whom were minors,

and the interests of Cook were conflicting and antagonistic; and that they should not be represented by the same counsel. In response to such suggestion the plaintiffs and intervener filed a pleading designated their supplemental petition in which they denied that the interests severally urged by them were conflicting, and alleged that they did not in this proceeding seek any determination of their respective rights inter sese in the land, and asked that under Rule 41, any conflicting demands or rights, if any should appear, be severed; and that any judgment entered in favor of plaintiffs or intervener against the defendants be without prejudice inter sese. The Court overruled said suggestion that there was any such disqualifying interest.

The cause was submitted to a jury upon special issues. The findings of the jury upon such special issues sufficiently appear from the judgment rendered thereon hereafter referred to. It was the theory of intervener that the transactions affecting the land, had between Mrs. Maness and Mrs. Brown, and the Land Bank and the Loan Company after November 21, 1935, were fraudulently had for the purpose of hindering, delaying and defrauding him in the collection of his debt. As constituting issues raised by the evidence under intervener's theory, the court submitted special issues Nos. 1, 2, 3, 4 and 5. As answered, special issues were:

1. That it was the intention of Mrs. Brown and Mrs. Maness, in having the Federal Land Bank assign the delinquent portion of its debt to Mrs. Brown, secured by a prior lien, to hinder, delay and defeat Cook in the collection of money due him.

2. That the quit-claim from Mrs. Maness to Mrs. Brown, dated February 13, 1936, was given and received with the intent on the part of Mrs. Maness and Mrs. Brown to hinder, delay or defeat Cook in the collection of money due him.

3. That Mrs. Brown purchased the land from the Loan Association by deed, dated March 4, 1936, in the furtherance of the intent upon the part of Mrs. Brown and Mrs. Maness to hinder, delay and defeat Cook in the collection of money due him.

4. That the Loan Association, in foreclosing on the lien for $130, did so with the intent to assist Mrs. Brown and Mrs. Maness to hinder, delay or defeat Cook in the collection of money due him.

5. That the Loan Association in conveying the property by deed, dated March 4, 1936, did so with the intent to assist Mrs. Brown and Mrs. Maness to hinder, delay or defeat Cook in the collection of money due him.

Upon the answers to said special issues and to other special issues the court rendered judgment:

That Cook, subject to a lien in favor of the Maness children to secure the payment of the indebtedness, which on November 21, 1935, amounted to $831.30, recover title and possession of the land from defendants; and that plaintiff Mrs. Maness recover nothing by her suit.

That defendant, Lewis Fogle, Esq., had advanced funds for the account of defendant, Mrs. Brown, believing her to be the owner of the land, in the sum of $1,908.58; and had received on account of said land the sum of $2,401.16. That Cook was consequently entitled to recover from Fogle the sum of $542.28.

Cook was also awarded judgment for the Loan Association stock.

That there was no conflict of interest between plaintiff and intervener. But an undivided one-half interest in the land was awarded absolutely to Cook; the right of the Maness children and intervener to the remaining half of the land was severed from the cause, and left for future determination.

The defendant, Mrs. Brown and Fogle, alone have appealed. They predicate their appeal upon 13 points which will sufficiently appear hereafter.

Defendants contend that the evidence was wholly insufficient to sustain the jury's answers to special issues Nos. 1, 2, 3, 4 and 5. In passing upon such contention we have, in deference to the jury's answers, assumed that Mrs. Brown, Mrs. Maness and the Land Bank and the Loan Association acted in reference to the matters inquired about in such special issues, with evil intent. But we are unable to hold that, so far as Cook is concerned, said parties did any act they did not have a right to do, or acted in any way so as to invade or obstruct any right possessed by Cook, and protected by R.C.S. Art. 3996 (Vernon's Ann.Civ.St. art. 3996) and art. 3997.

When Cook foreclosed his second lien in October 1933, he became the fee simple owner of the quarter section here involved, subject to the superior lien held by the Land Bank. His lien had ceased to exist simply because it had been terminated by being foreclosed. He was the owner of, not a lienholder against, the land. The rights of the Maness children in the land as the heirs of their father, and the community interest therein of Mrs. Maness ceased to exist. There is no evidence and no pretense that Luther F. Maness left any property other than the land in question. Neither the children nor Mrs. Maness owed any money to Cook. The money which the children had recovered by way of damages for their father's death belonged to them in their own right, and not in the capacity of heirs of their father. It was not subject to the payment of their father's debts.

As between Cook and Luther F. Maness, Maness was primarily liable on the first lien debt due the Bank. The Bank had the right to have the delinquency due it on such debt paid up. Shortly after November 21, 1935, the Bank truly informed Cook, in response to his inquiry, of the amount of the delinquency on the debt. If Cook had the ability, he did not have the disposition to pay up such delinquency. Aside from the Bank, Cook was the only living person with any pecuniary interest in seeing the delinquency paid up. The Bank had the legal right to collect the delinquent portion of the debt, and was threatening to foreclose. It had the absolute legal right to assign such delinquent portion of the debt, and thus avoid a foreclosure in effecting the collection thereof. While it is difficult to predicate any evil intent on the part of the Land Bank toward Cook, from its action avoiding a foreclosure by assigning the delinquent portion of the debt to Mrs. Brown, yet the Bank had the absolute legal right to make such assignment. Such assignment did not violate any right of Cook. It took from view no property that Cook had any right to have applied to the Bank's debt which, after all, he also owed the Bank. Such assignment not only, as a matter of law, did not and could not hinder, delay or defraud Cook in collecting the debt which Luther F. Maness owed him; it did not and could not hinder, delay or defraud him in his right to pay the Bank the debt which he owed it, or in having the property applied to the payment thereof.

Shortly after the date of such assignment, in response to Cook's inquiry, the Bank informed Cook of such assignment so made to Mrs. Brown. If it was known

to the Bank that the money used to pay for the assignment belonged to the Maness[7] children, it did not so inform Cook, and for present purposes we will assume that the Bank intentionally concealed such fact. The Bank had the right to get its debt paid on such terms as it could, so long as it invaded no right of anyone else. Cook's right and obligation to pay the portion of the debt which had been assigned to Mrs. Brown was neither greater nor less, irrespective of whether she held the assignment in trust, or in her own right. In no event did he ever make any effort to pay same. From his petition it is made to appear that Cook was laboring under the erroneous impression that, if the money belonged to the Maness children, such money was liable for the payment of the debt due the Bank; and that the payment thereof to the Bank for the assignment had the effect of extinguishing the delinquency and lessening the debt pro tanto to the extent of $831.30.

Apparently at the time of the assignment to Mrs. Brown of the delinquent portion of the debt, it had been overlooked by the Bank that it had re-transferred to the Loan Association an item of delinquency in the sum of $130. Cook knew about the assignment to the Loan Association also. He knew of the Loan Association's advertised foreclosure sale on said indebtedness in the sum of $130, and attended such sale. With full knowledge of all material facts, he suffered his equity of redemption to be foreclosed. The reason assigned by him in his petition for suffering such foreclosure to take place was his belief, induced by the representation of the Bank, that the delinquent portion of the debt which had been assigned to Mrs. Brown, remained as an outstanding delinquent portion of the debt, upon which foreclosure could be had, and not being able to pay up such delinquency, he chose not to pay the delinquency of $130. His reason for permitting such foreclosure was a sound one. The debt so assigned to Mrs. Brown did remain both outstanding and delinquent, and subject to foreclosure. The foreclosure sale on the $130 indebtedness resulted in the Loan Association acquiring the fee simple estate in the land, subject to lien held by Mrs. Brown and subject to the lien held by the Bank.

■ In buying in the land at the foreclosure sale for the full amount of its debt the Loan Association only did what it had the absolute legal right to do. And it is immaterial whether it acted to protect its rights in the land, or with vindictiveness towards Cook. If it can be said that by foreclosing Cook's equity of redemption, the Loan Association thereby defeated his right to redeem, it must be said that Cook with full knowledge of all material facts suffered such right to be lost. Such foreclosure sale was not a hindering, delaying or defrauding Cook in the exercise of any right he had, and did not violate Arts. 3996 and 3997.

As the fee simple owner of the land in question the Loan Association could dispose thereof as it saw fit. Since Cook's rights in the land were foreclosed by the foreclosure sale, he could have no concern in what was thereafter done with the property. The deed from the Loan Company to Mrs. Brown, and the quit-claim deed from Mrs. Maness to Mrs. Brown, as a matter of law, could not have been in violation of Arts. 3996 and 3997.

■ Cook contends that the Loan Association was obliged, without any request therefor from him, to apply the value of the stock to the payment of the $130. But Cook was present at the foreclosure and did not request any such application, and apparently did not desire at that time that any such application be made. According to his pleadings he did not want to pay the $130, because he was unable to pay up the $831.30 delinquency which, he correctly believed at the time, was an outstanding delinquency which was then subject to foreclosure. The failure of the Loan Association to make such application, in the absence of a demand therefor, and with the full knowledge and acquiescence on the part of Cook, was no fraud on him, and was no invasion of any rights protected by Arts. 3996 and 3997. So far as could then be known, and so far as Cook then believed, such application would not have averted a foreclosure. In any case, Cook did not see fit to pay off the $130 because he was not able to pay off the then outstanding delinquency in the amount of $831.30.

We fully understand that it is Cook's position that he has sued in trespass to try title, and that in that form of action, when it is established that a defendant holds title to land under a transaction which was a simulated one for the purpose of hindering, delaying or defrauding the plaintiff, the plaintiff is entitled to recover the land sued for just as though such simulated transaction was never had. But in our view the

evidence, as a matter of law, not only failed to support the jury's answers to special issues Nos. 1, 2, 3, 4 and 5, but established that the transactions were so far as Cook was concerned, lawful. It is our opinion, therefore, that Cook failed to establish any right to recover the title or possession of the land sued for.

■ There was evidence which tended to support the right of the Maness children to recover the title and possession of the land here involved. But no motion was presented on their behalf for judgment, and no complaint made on their behalf of the judgment which was rendered. We have concluded that it would be fruitless for us to inquire on appeal whether or not the failure of the court to render judgment for the Maness children was fundamental error apparent upon the record. Courts of Civil Appeals now apparently have no jurisdiction to consider errors apparent of record, unless assigned. See City of Santa Anna v. Leach, Tex.Civ.App., 173 S.W.2d 193; Tex. & Pac. Ry. Co. v. Smith, Tex.Civ. App., 183 S.W.2d 182.

■■ Furthermore to render judgment that the Maness children recover title and possession of the land sued for would involve predicating such recovery upon a theory not adopted or urged in the trial court. For instance, the jury found upon sufficient evidence that Mrs. Brown, when she accepted the assignment of the delinquent portion of the indebtedness in the sum of $831.30, and when she accepted the deed from the Loan Association, and when she accepted the quit-claim deed from Mrs. Maness, received same upon the agreement, express or implied, that she would hold same in trust for Mrs. Maness and the Maness children. It seems obvious that Mrs. Maness and Mrs. Brown, if such agreement was made, acted on the mistaken belief that the rights of Mrs. Maness in the land had not been foreclosed by Cook when he foreclosed his second lien. Such an agreement in so far as it purported to give Mrs. Maness rights in conflict with the rights of her children, whom she was undertaking to represent as guardian, was as to them invalid, and must be held to have been made wholly for the children's benefit. The question of a resulting trust for the children in so far as the agreement embraced Mrs. Maness was not presented, nor passed upon below. In order to sustain the right of the Maness children to recover the title of the land, it is necessary to establish that Mrs. Brown, while holding the lien securing the $831.30 in trust for the Maness children, acquired the deed from the Loan Association in trust for them, so that the lien merged in the title she acquired in trust for them. There was no motion made on behalf of the children that the court hold that so much of the agreement that provided that Mrs. Brown should hold in trust for Mrs. Maness be enforced as a resulting trust for her children. In a word, so far as plaintiffs and intervener are concerned, they tried the case on the theory that Mrs. Maness owned a half interest in the property, and the children the remaining half. We cannot change the theory on appeal, after trial below. We sustain defendants' points that evidence wholly failed to sustain the jury's answers to special issues Nos. 1, 2, 3, 4 and 5.

For the reasons given the cause must be reversed for a new trial, in view of our holding that Cook is not entitled to recover the title or possession of the land, and such holding becomes the law of the case, it is unnecessary for us to pass on whether Mr. Dyess had the right to represent the intervener and at the same time he represented the Maness children. See O'Meara v. Moore, 142 Tex. 350, 178 S.W.2d 510. Such point cannot arise upon a new trial.

In their 9th and 10th points defendants complained of the action of the trial court in admitting in evidence the contract between intervener on the one part, and Mrs. Maness and her children through their guardian on the other part, and the order of the Probate Court thereon, as being irrelevant, immaterial, and prejudicial. The materiality thereof was not made to appear. The Maness children were represented in court by the guardian of their estates. Unless such agreement is shown to be material upon some ground other than heretofore made to appear, it should not be admitted into evidence upon another trial.

By the 11th point defendants complained of the judgment rendered against Mr. Fogle for the sum of $542.28. The question of Mrs. Brown's liability for the money received by Mr. Fogle was not raised, and so is not before us, except in an incidental manner.

Mr. Fogle began to represent Mrs. Brown, as her attorney, in May 1936, and thereafter came to represent her as her

agent in negotiating oil leases, and in collecting the consideration therefor, and so of the sale of rights-of-way across the land. He also collected rents due on the land. In addition to rendering her services he advanced from time to time the money necessary to keep the debt due the Land Bank in good standing, and to pay the taxes on the land. He also advanced her sums of money on what may be termed a general account. He kept a careful account of all such transactions. And when he collected money due Mrs. Brown on rents, etc., he applied same with her approval to the payment of what she owed him, and credited her account accordingly.

Mr. Fogle knew nothing of any claims of plaintiffs or intervener to own the land until this suit was filed, and in good faith believed her to be the owner. Obviously there can be no recovery against him for any sum which he advanced for Mrs. Brown's account which was used to pay off the indebtedness due the Land Bank, the payment of which was secured by a lien against the land. So also with reference to advancement to pay taxes against the land. Nor was any contention made to the contrary.

But we have not been satisfied on the score of Fogle's liability for the other items. He never obtained from Mrs. Brown a mortgage on the land to secure the payment of the balance on the account between them. Therefore, in order to fix a lien in his favor on the land he would have to show some sort of equitable estoppel against plaintiffs. Under principles discussed in Bicocchi v. Casey-Swasey Co., 91 Tex. 259, 42 S.W. 963, 66 Am.St.Rep. 875, he was not entitled to such a lien. We do hold that he could not be charged with a rental collected by him before he had knowledge of the claim that Mrs. Brown did not own the land, and which was not retained by him. Just what his further liability was is left to be determined upon another trial. If it should be determined that the Maness children are not entitled to recover the land, the question will not arise.

Our former holding and opinion herein are withdrawn, and the judgment of the trial court is now reversed and the cause remanded for another trial. The motions of the appellants are granted and that of the appellees is overruled.

Reversed and remanded.