**SHAMROCK FUEL & OIL SALES CO., Inc.,
Keith L. Ward and Johnny
Hale, Relators,**

v.

**Honorable Bert H. TUNKS, District Judge,
William Earl Munsinger and Omy
Ray Munsinger, Respondents.**

No. A–11753.

Supreme Court of Texas.

June 7, 1967.

Dissenting Opinion June 21, 1967.

Rehearing Denied July 5, 1967.

Fulbright, Crooker, Freeman, Bates & Jaworski, Russell Talbott, McGregor, Sewell, Junell & Riggs, Ben G. Sewell, Houston, for relators.

Bracewell & Patterson, Joseph Jaworski and John R. Cope, Houston, for respondents.

NORVELL, Justice.

 Shamrock Fuel & Oil Sales Co., Inc., Keith L. Ward and Johnny Hale, relators,[1] seek an original writ of mandamus ordering Hon. Bert H. Tunks, Judge of the District Court of Harris County, 113th Judicial District of Texas, to render

1. The relators, Shamrock Fuel & Oil Sales Co. and Keith L. Ward were distributors of petroleum products and had delivered the kerosene (alleged to have been adulterated) to Johnny Hale who operated a Gulf filling station. Certain refiners were originally made parties but the court instructed a verdict in their favor apparently upon the theory that the product was not defective when it left the refinery, but that adulteration took place thereafter. The Court of Civil Appeals in an opinion rendered in a mandamus proceeding noted that "there was evidence that at the time of the explosion (which injured the minor plaintiff) the kerosene was adulterated by the addition of gasoline to the extent that the flash point of the kerosene was lower than that specified by Article 1104, Vernon's Ann.P.C." See, Tex.Civ.App., 406 S.W. 2d 483, 484, 485.

judgment upon an admittedly incomplete special issue jury verdict. Our authority to order a judge of a district court to render judgment upon a verdict is derived from Article 5, § 3 of the Texas Constitution, Vernon's Ann.St. and Article 1734, Vernon's Ann.Tex.Stats. The statutory enactment provides that this Court may "compel a judge of the district court to proceed to trial and judgment in a cause agreeable to the principles and usages of law, * * *." In this particular, the Supreme Court has concurrent jurisdiction with the Courts of Civil Appeals. Article 1824 provides that, "Said Courts [of Civil Appeals] * * * may issue the writ of Mandamus to compel a Judge of the District or County Court to proceed to trial and judgment in a cause, * * *"

In accordance with the usual practice applicable to situations involving concurrent jurisdiction, Houtchens v. Mercer, 119 Tex. 244, 27 S.W.2d 795, Id. 119 Tex. 431, 29 S.W.2d 1031, 69 A.L.R. 1103 (1930), Appellate Procedure in Texas, § 1.4 [1], the relators first applied to the Court of Civil Appeals. That court refused to grant the writ of mandamus, 406 S.W.2d 483, whereupon the relators made application here.

William Earl Munsinger and his son, Omy Ray Munsinger, a minor, sued relators for injuries sustained by the minor plaintiff when he attempted to make use of kerosene allegedly adulterated with gasoline. Trial to a jury resulted in an incomplete verdict which was not accepted by Judge Tunks and a mistrial was declared.

A total of 43 issues was submitted and 24 of them were not answered by the jury. Six of these issues were not answered because under the instructions of the court, the jury was not required to answer them because of its answers to preceding questions. One issue inquired if the minor plaintiff knew and appreciated the extent of the dangers in the use he made of the liquid (kerosene). This inquiry was not answered nor was the conditionally submitted question which immediately followed inquiring if said minor voluntarily exposed himself to such danger. However, the jury found that the minor plaintiff was contributorily negligent in directing his brother to pour the liquid (kerosene adulterated with gasoline) upon a smoldering stick which he had taken from an incinerator and placed in a toy truck, and that such negligence was the proximate cause of his injuries sustained as a result of an explosion which took place.

Plaintiffs' action was predicated upon negligence and upon a warranty implied by law (strict liability in tort) based upon the proposition that the defendants, Shamrock Fuel & Oil Sales Co., Inc. and others, had sold a product in a defective condition which was unreasonably dangerous to the user. Relators present two contentions, namely, (1) that as there was neither pleading nor proof of privity of contract between any of the relators and the injured minor plaintiff, this Court should order the trial court to render judgment that plaintiffs take nothing against them, and (2) that because the jury found that the minor plaintiff was guilty of contributory negligence, this Court should direct the trial court to render a take nothing judgment.

■ Because of limitations upon the mandamus remedy, the first question stated is not properly before us.[2] This is not a case in which it is contended that some of the jury's answers taken in connection with certain undisputed facts would call for a judgment in favor of the defendants, O'Meara v. Moore, 142 Tex. 350, 178 S.W.2d 510 (1944), but the argument is that no cause of action was stated or proved in the absence of a pleading and

2. As to the requirement of privity of contract in strict liability cases, see, McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787, decided this day.

evidentiary showing of privity of contract. The power with which we are here concerned is that of ordering a judgment to be rendered upon a verdict which is classified as a ministerial act involving no exercise of judicial discretion. Lloyd v. Brinck, 35 Tex. 1 (1871), Gulf, Colorado & Santa Fe Ry. v. Canty, 115 Tex. 537, 285 S.W. 296 (1926). The authority vested in the appellate courts under Articles 1735 and 1824, insofar as the rendition of judgment is concerned, is restricted to the ordering of the ministerial act of rendering judgment upon the verdict and does not extend to the judicial function of determining whether a petition states a cause of action, Jackson v. McKinsey, 12 S.W.2d 1044 (Tex.Civ.App. 1928, Original Mandamus), or whether the undisputed evidence demonstrates that a judgment should be rendered as a matter of law, i. e., that a verdict should be directed or a judgment, non obstante veredicto, rendered, American Bottling Co. v. Briggs, 232 S.W.2d 103 (Tex.Civ.App. 1950, Original Mandamus), Appellate Procedure in Texas, Original Jurisdiction of the Courts of Civil Appeals to Issue Extraordinary Writs, § 1.4 [2], 8 Sw.L.J. 389 (1954).

In considering the second question, whether contributory negligence is a defense to an action based upon strict liability, we must necessarily accept the hypothesis that the pleadings and proof support a recovery based upon strict liability unless defeated by the issues answered by the jury relating to contributory negligence, because we may not by mandamus invade the realm of judicial discretion, but are limited to directing the performance of a ministerial act. Lowe &

Archer, Injunction and Other Extraordinary Proceedings, §§ 471, 478 and 480.

Both the District Court and the Court of Civil Appeals, 406 S.W.2d 483 (on application for original mandamus), have held that the jury's answers to Special Issues Nos. 36 and 37 do not constitute a bar to recovery in a strict liability case. By its answers to these issues, the jury found that the minor plaintiff was negligent in directing his brother to pour the liquid in a black can (allegedly adulterated kerosene) on a stick and toy truck and that such negligence was a proximate cause of the burns sustained by such plaintiff.[3]

Negligence and ordinary care as applicable to the minor plaintiff were defined as follows:

"By the term 'negligence' as used in this Charge is meant the failure to use ordinary care.

"By the term 'ordinary care' as used in this Charge and as applied to the minor plaintiff, Ray Munsinger, means such care as an ordinarily prudent child of the age, intelligence, experience and capacity of the said Ray Munsinger would have exercised under the same or similar circumstances."

There is conflict in the rules laid down in the decided cases as to the nature and scope of the contributory negligence defense in strict liability cases. Compare, Nelson v. Anderson, 245 Minn. 445, 72 N.W.2d 861, 865 (1955), and Vassalo v. Sabatte Land Co., 212 Cal.App.2d 11, 27 Cal.Rptr. 814 (1963). See, generally, Annot., 4 A.L.R.3d 501 (1965). The Supreme Court of New Jersey, which was one of the first courts to recognize this class

---

3. By Special Issues Nos. 31 and 32, the trial judge submitted the defense of assumed risk or voluntary exposure. These issues which were not answered by the jury read as follows:

"Do you find from a preponderance of the evidence that Ray Munsinger knew and appreciated the extent of the dangers involved in the use being made of the liquid in the black can at the time of the occurrence in question?

"If you have answered, Special Issue No. 31 'We do' and only in that event, then answer:

"Do you find from a preponderance of the evidence that Ray Munsinger voluntarily exposed himself to such dangers?"

of action, has recently said that where a plaintiff "fails to act as a reasonably prudent man in connection with use of a warranted product or one which comes into his hands under circumstances imposing strict liability on the maker or vendor or lessor, and such conduct proximately contributes to his injury, he cannot recover". Maiorino v. Weco Products Co., 45 N.J. 570, 214 A.2d 18 (1965), following Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965). It seems, however, that the weight of authority is contrary to the view expressed by the New Jersey court.

Dean Prosser points out that much of the divergence of opinion among the decided cases is more apparent than real. He says:

"There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. A few decisions have said flatly that it is not. The greater number have said quite as flatly that it is. The conflict is, however, more apparent than real. If the cases are examined, it readily appears that those which refuse to allow the defense have been cases in which the plaintiff negligently failed to discover the defect in the product, or to guard against the possibility of its existence. They are entirely consistent with the general rule that such negligence is not a defense to an action founded upon strict liability. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. They represent the form of contributory negligence which consists of deliberately and

unreasonably proceeding to encounter a known danger, and overlaps assumption of risk. They are quite consistent with the general rule that this is a defense to strict liability. There are only a few cases which have recognized the distinction; but it seems quite clear that it is made in fact." (Prosser, Law of Torts [3d Ed.] 656.) [4]

A shorter but similar statement is contained in Dean John W. Wade's article on Strict Tort Liability, 19 Sw.L.J. 5, l. c. 21:

"The cases appear to be in disagreement as to whether contributory negligence of the plaintiff bars his recovery in an action for strict products liability. In general, however, they can be reconciled by adverting to the customary distinction between contributory negligence and assumption of risk. If the plaintiff's negligence was in failing to discover the unsafe condition of the product he can usually recover; if his negligence was in continuing to use the product after learning of the dangerous condition, his recovery is usually barred."

In 2 Restatement of the Law of Torts (2d Ed.) 356, in Comment (n), Contributory Negligence, under § 402A (cited and quoted by the Court of Civil Appeals), it is said:

"Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name

4. As stated in Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942), the "breach of warranty" concept discussed in strict liability cases is essentially one of tort and not contractual in nature. However, while the doctrine imposes an obligation sounding in tort, liability is not based upon negligence. 2 Restatement of Torts (2d Ed.) 347, § 402A, Comment (n).

of assumption of risk,[5] is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless unreasonably proceeds to make use of the product and is injured by it, he is barred from recovery."

We agree with the rationale stated by the Court of Civil Appeals that "in a case such as this a plaintiff would not be barred from recovery even though his injury was caused in part by his failure to test the kerosene, or by his failure to foresee that the kerosene might have a dangerously low flash point and to guard against such a possibility."

In a separate argument, the relator, Johnny Hale, the operator of an automobile service station, argues that the contributory negligence findings of the jury in answer to Special Issues Nos. 36 and 37

---

5. The use of the term "assumption of risk" may involve semantic difficulties, particularly in those jurisdictions, including Texas, where the phrase has been used to designate a specific doctrine applicable to definite contractual relationships such as master and servant. The Latin maxim, "volenti non fit injuria", is sometimes used to designate the doctrine of voluntary exposure to risk in non-contract cases. See, Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607, l.c. 610 (1952), and Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). There can be no objection to using the phrase "assumption of risk" in a non-technical sense in a case which does not involve a master and servant relationship so long as it is clearly understood that it is being used to describe a person's actions and not to designate a particular doctrine, which doctrine as pointed out in *Schiller*, has a limited scope. This was done in Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup.1966). In an address on Assumption of Risk, published in 16 Baylor Law Review 111 (1964), Justice Greenhill said:

"As you know, we have two different concepts of assumed risk: (1) the no-duty cases applicable to occupier-invitee situations, and (2) the *volenti* cases *(volenti non fit injuria)* applicable on the occupier's premises and also to other assumed risk situations. I will attempt to refresh your memories on the differences. But in general, both will be referred to as 'assumed risk' cases. To illustrate the confusion, you know that the Texas Supreme Court in *Wood v. Kane Boiler Works*, 150 Tex. 191, 238 S.W.2d 172 (1951) held that 'assumed risk' applied only to master and servant cases; but *volenti* (the same thing) applied in non-master and servant cases."

As to assumption of risk and *volenti non fit injuria*, Professor Robert E. Keeton observes that:

"It has often been said that there is no substantive difference between assumption of risk and *volenti non fit injuria*, although as a matter of customary terminology in some courts assumption of risk applies only in employer-employee cases or only in cases of contractual relationships, whereas the *volenti* doctrine applies to other situations. E.g., Terry v. Boss Hotels, Inc., 376 S.W.2d 239 (Mo.1964) (plaintiff slipped and fell on dance floor, which he admitted he realized was too heavily waxed; proper to submit the defense to the jury); Wood v. Kane Boiler Works, Inc., 150 Tex. 191, 238 S.W.2d 172 (1951) (inspector killed when pipe burst during tests; defense failed for want of showing full appreciation of risk). Long preservation of a distinction in terminology, however, is bound to invite explanations that there really is a difference. No distinction is made between the two in this Article. It will be well if courts continue to resist the temptation to give different substantive or procedural effects to these two theories of what is in essence one and the same defense." See footnote, Robert E. Keeton, Assumption of Products Risks, 19 Sw. L.J. 61.

It is quite obvious that the terms "assumption of risk" and "voluntary exposure to risk" are used in many areas of the law, such as "on premises cases", "off premises cases", "products liability cases" and "master and servant cases", and that these phrases take their meaning from the context in which they are used and the type of case involved. Depending upon these considerations, for example, these phrases may connote a definite specific risk or refer more generally to all risks incident to a particular operation or occupation. As a matter of valuing precedents, the type of case is of importance.

should be construed as a finding that the minor plaintiff was making an "improper use" of the product when he instructed his brother to pour the kerosene upon a glowing or smoldering stick.[6] He points out, and we agree that, "this area of the law is permeated with semantic problems, * * * (and that) principles of contributory negligence and assumption of risk may overlap considerations of proximate cause, the duty to mitigate damages, the duty of a buyer to inspect, the failure of a buyer to rely on a warranty, etc. * * * *" 4 A.L.R.3d 501, l. c. 503. One or more jurors may have believed that the child "misused"[7] the product. Others may have believed that he knew the product was dangerous yet persisted in its use. All may have agreed that the child's behavior was sub-standard under the "reasonably prudent" test. Here it is not necessary to decide and hence we make no holding upon the issue of "improper use", or whether, if allowable, it is a defense, or if the showing of a proper use is properly regarded as a part of a plaintiff's action.

 It may be argued that improper use or voluntary persistence in use after discovery of danger is encompassed within the prudent man inquiry as stated in the contributory negligence issues given by the court, but the point is that such issues Nos. 36 and 37 do not submit the legitimate defenses available to one from whom damages are sought under the doctrine of strict liability. Compare, Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup.1966). A manufacturer or distributor of products is not an insurer. As pointed out by Dean Prosser, a plaintiff may be barred from recovery when, after actual discovery of the dangerous propensities of an article or product, he persists in its use and thus assumes the risk of injury by its continued use. This voluntary exposure to risk may not be the only type of action or failure to act that may bar a plaintiff's recovery and we do not mean to infer that it is, but these defenses, voluntary exposure and such others as may be recognized should be submitted specifically and not under the formula embraced by the contributory negligence issues (Nos. 36 and 37) employed in this case. Such form of submission embraces a failure to discover a defect or to guard against the possibility of its existence which under the greater weight of authority is not a defense to the action. Under modern conditions of advertising

6. Hale also says that he purchased the allegedly adulterated kerosene from a reputable supplier; that the kerosene was delivered through a hose directly from the supplier's transport truck to his sealed drum kerosene container; that he had no opportunity to examine or test the product and that the kerosene was not sold to the minor plaintiff by Hale, but was sold to the father, William Munsinger. On the basis of these facts, he argues that there was no privity of contract between him and the injured minor, Omy Ray Munsinger, and that privity is essential to the Munsingers' cause of action. For the reasons heretofore discussed, the writ of mandamus does not operate to control judicial discretion and would be unavailable to afford the relator Hale the relief he seeks even if it be assumed that the proposition asserted by him be sound. As to the privity requirement, see McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, this day decided;

Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942); and Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424 (1942). Compare, Bowman Biscuit Co. of Tex. v. Hines, 151 Tex. 370, 251 S.W.2d 153 (1952).

7. The Court of Civil Appeals, after holding that the minor plaintiff's failure to test the kerosene or failure to discover its dangerously low flash point and guard against it would not bar his recovery, said:

"He would, however, be barred if he misused the product, that is, if, by reason of the manner in which he used the product, he would have been injured had the kerosene conformed to the statutory standard, or if, knowing that the kerosene was defective and of the danger of an explosion, he fails to exercise reasonable care to avoid the threatened harm." 406 S.W.2d 483, l.c. 490.

and marketing, there exists a strong consumer reliance upon the integrity of the manufacturer and vendor of a product. The representation of safety in use is not restricted to those consumers of the reasonably prudent variety. It would be incongruous to hold that one could not recover upon the representation that a product was safe because he had failed to meet the test of the reasonably prudent man in discovering that the representation was not true. "Consumer reliance upon the integrity of the manufacturer and his product is the foundation of warranty liability. It therefore appears that, short of actual knowledge of a defect [or circumstances charging him with knowledge as a matter of law] [8], and continued use of the product with such knowledge, the consumer's failure to conform to the standard of care of the reasonably prudent man when using the defective product may merely be a manifestation of his reliance upon both the reputation of the manufacturer and his product." Comment, Contributory Negligence as a Defense to Warranty Actions, 39 Temple Law Quarterly, 361, 363 (1965–1966).[9]

The petition for mandamus is denied.

GRIFFIN, J., dissenting.

## DISSENTING OPINION

GRIFFIN, Justice.

I can agree on the doctrine of strict liability with my brethren in this case, but I cannot agree that contributory negligence should not be a defense to a suit by a party upon the "warranty" or tort doctrine.

In this case the jury has found that Ray Munsinger was guilty of negligence in directing his brother to pour the liquid purchased by Ray Munsinger's father as kerosene upon a smoldering stick which he had taken from an incinerator and placed in a toy truck. The jury also found that such negligence was a proximate cause of his injuries sustained as a result of the explosion.

8. In Halepeska v. Callihan Interests, 371 S.W.2d 368 (Tex.Sup.1963) the court said:

"Logically, a plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Thus, while the cases speak of the requirement of *actual* knowledge and appreciation, the plaintiff may not close his eyes to obvious dangers; and he may not recover where it is shown that he is in possession of facts from which he would be legally charged with appreciation of the danger. Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952)."

9. Some authorities proceed upon the theory that an implied warranty raised by policy considerations is closely akin to an expressed contractual warranty. This is sometimes given as a basis for holding that a failure to discover the dangerous propensities of a product is not a defense to the implied warranty because it would not be a defense to a suit upon an expressed warranty. See, Dagley v. Armstrong Rubber Company, 344 F.2d 245 (7th Cir. 1965), citing Hansen v. Firestone Tire and Rubber Co., 276 F.2d 254 (6th Cir. 1960). In this state, the implied warranty "is not the more modern contractual warranty, but is an obligation imposed by law to protect public health". It is a tort concept. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W. 2d 828, 142 A.L.R. 1479; Griggs Canning Co. et al. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424 (1942). This implied warranty raised by law, or strict liability to the consumer, being a creature of policy, the allowable defenses thereto are likewise controlled by policy. The analogy between this form of implied warranty and a contractual expressed warranty does not derive its validity from a supposed similarity of origin between the two, but from the fact that experience has shown that the denial of a defense based upon a failure to discover danger and guard against it, has proven just in expressed warranty situations and should prove suitable in factual similar cases based on strict liability. The argument is not based solely upon abstract logic, but is primarily drawn from experience and empirical data.

The trial judge defined "negligence" as the failure to use ordinary care. "Ordinary care" was defined, " * * * as applied to the minor plaintiff, Ray Munsinger, *means such care as an ordinarily prudent child* of the age, intelligence, experience, and capacity of the said Ray Munsinger would have exercised under the same or similar circumstance." (Emphasis mine.)

The effect of the jury findings on the issues of negligence and proximate cause is that Ray Munsinger did not exercise the care of a child of his age in his actions and conduct in handling and dealing with the liquid in the can. This being true, I just cannot agree that Ray should be excused from his own negligence and permitted to recover. I do not understand that a manufacturer, distributor, or retailer of any product can be charged with foreseeing any one in his right mind would fail to use ordinary care in his actions and conduct toward, or with, such product. Surely, a manufacturer, distributor, or retailer is not to be mulcted in damages for the one and only reason that he put the product in circulation.

The ordinarily prudent child [person] is a well recognized test for measuring conduct of others in practically all cases, therefore, I cannot agree it should not be the test in a strict liability case.

The rule announced by the majority opinion is the minority rule in the United States. The quotation from Dean Prosser set out in the majority shows this to be true. Read the following language from such quotation:

"There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. *A few decisions* have said flatly that it is not. *The greater number* have said quite as flatly that it is." (Emphasis mine.)

Then Dean Prosser sets out what he considers good reason for reconciling the conflict in favor of the "few decisions." I do not agree and prefer the rule followed by the "greater number."